[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff husband caused the writ, summons and complaint to be served on defendant wife on January 20, 1990. He claims (1) a decree dissolving the marriage, (2) an order settling the rights of the parties in the jointly owned real estate, and (3) such other and further relief to which the plaintiff may be entitled in law or equity.
On February 2, 1990 an appearance was filed for defendant. A notice of filing request for disclosure and production has filed on February 5, 1990 on behalf of defendant. On February 7, 1990 defendant filed an answer admitting all seven paragraphs of the complaint and a cross complaint wherein she claims (1) a dissolution of the marriage, (2) alimony, (3) an order pursuant to46b-81, (4) attorney's fees and litigation expense, and (5) same
The testimony and pleadings clearly support findings that the parties intermarried on September 13, 1958 at Hamden, Connecticut. have resided in Connecticut for at least twelve months next preceding the date of the filing of the complaint, have no minor children, have not been recipients of public assistance and that the marriage has broken down irretrievably.
The parties embarked on the sea of matrimony while in their early twenties. His father bestowed substantial material assistance upon them to help them get started. He was engaged in his family-owned fruit and vegetable business and without question was dedicated and hard working for long hours, day in and day out. for all his adult life. She dedicated her married life to her household duties and the rearing of their five children, all of CT Page 6899 whom are now adults and must be classified as being capable of carrying their own "loads in life."
Both parties have filed financial affidavits dated August 1, 1991. Her main asset is her survivorship interest in the family residence on Dillon Road, Woodbridge, Connecticut. (Exhibit A). This property is free and clear of any mortgage. Her remaining assets, as listed on her affidavit, consist of jewelry of unknown value, a mink coat valued at $2,500.00, and joint interests in IRA's, savings and checking accounts valued at $8,080.00, and a joint interest in stock, bonds and mutual funds valued at $40,170.89
Summary
 68 Dillon Road — 50% . . . . $190,000.00 Mink coat . . . . . . . . . 2,500.00 IRA's . . . . . . . . . . . 7,080.00 Bank Accounts . . . . . . . 1,000.00 Stocks, Bonds, Funds . . . . 40,170.89 Total . . . . . . . . . . . $240,750.89
Her liabilities of $23,715.89 consist of $17,856.00 for legal fees, $3,196.00 for landscaping, and $2,663.89 for department store charges. Her net worth is computed at about $217,000.00 with one-half the value of Dillon Road included. Without the house, at about $27,000.00.
There is no evidence that she has any income except negligible interest and court-ordered alimony. In addition, she benefits from court-ordered payments he presently makes on her behalf as stated hereinafter.
She seeks the sum of $1,623.21 weekly to sustain her past standard of living or quality of life, a little less than $85,000.00 a year. (See financial affidavit of August 1, 1991.)
His financial affidavit dated and filed August 1, 1991 carries his "Total Weekly Net Income" at $718.49. This compilation is based on his weekly salary, plus an extra month for unused vacation, plus net rental income adjusted for depreciation, interest on bank accounts, and dividends (on stocks owned jointly with defendant). These figures have been adjusted for taxes. He carries his total weekly expenses as $925.09, that includes $200.00 alimony, $70.00 for a housekeeper for her, utilities including cable, insurance and taxes.
The plaintiff has received substantial bonus payments in the past not reflected above. No bonus has been paid nor is any anticipated for the recent two fiscal years. CT Page 6900
His affidavit lists the total cash value of his assets at $1,153,378.42 and his liabilities at $90,855.65 for a net worth of $1,062,522.77. Of course, the defendant does not agree with that computation. Defendant seriously contests the valuation process used by plaintiff.
In responding to the claims for relief set forth in the complaint and cross complaint, the court must follow the mandates of C.G.S. 46b-81 and 46b-82 concerning assignment or sale of all or of any part of the estate of either or both and ordering alimony as requested by defendant on the cross complaint.
Secs. 46b-81 and 46b-82
The parties were married on September 13, 1958. The complaint was served on defendant January 20, 1990. The length of the marriage was just more than thirty-one years.
The cause for the dissolution of the marriage is contested. As in most cases of marital disharmony, events, some trivial, some serious, produce sores that, like cancer, feed off themselves and blossom into mortal wounds. Defendant blames in large part plaintiff's conduct in social behavior as the cause. He, however, worked long days during the marriage without very many vacations. His work day was from early morning until the day's receipts were tabulated and sent upstairs late in the afternoon. He was a good provider for his wife and family. She never lacked for money for herself or their five children. College educations were available and provided for the children. The family residence was in a prestigious community. All individual material needs were satisfied during the marriage. She was a good housewife and mother.
His claim is that his needs were ignored by her and their family. As the children matured and entered the business world, their family life disintegrated and he suffered loss of respect as the head of the household. The genesis of this alleged cause was the gradual assumption of control of the family finances by one of their children who also gained control of the family commercial and investment assets.
This activity resulted in financial difficulties, monetary losses, criminal charges and a serious division in family loyalties. Some of the children have taken sides. This "infection" appears to be the beginning of the end of the life of this marriage. The mother's love for the lost sheep of the family made insignificant by comparison her obligations and duties to her husband as expressed and implied in her vows of thirty some years past. CT Page 6901
His subjective conclusion that he suffered loss of respect from his wife and family and his frustration with the conduct and behavior of his son in the family business provided the predicate or cause for him to file for the dissolution of their marriage. The court's finding of irretrievable breakdown is, however, predicated on the cross complaint and her subjective complaints concerning his conduct and behavior.
She testified that after the first seven or so years of marriage his "drinking and womanizing" accelerated over the years. She requested him to be more of a father and husband but he refused to change, claiming he could stop when he wanted to stop. These subjective conclusions of hers must be considered and weighed with the excellent "work history" of the plaintiff. The more persuasive evidence fortifies her complaints and conclusions concerning his behavior and conduct notwithstanding his fine work history. It is again noted that his conduct caused her state of mind that provided the basis for the conclusion that the marriage had irretrievably broken down.
The plaintiff and defendant are approximately the same age.
His health appears to be unremarkable and appropriate for a male about to be classified as a senior citizen. His work record and attendance "on the floor" at the family wholesale fruit and vegetable business is excellent.
Her health appears to be of more concern. No doubt the stress and emotional drain of this dissolution, her son's pending prosecution, her financial uncertainty, and the vicissitudes of everyday life in this modern, uncertain economy can only accelerate her existing hypertention.
The court notes that C.G.S. 38a-538 mandates the continuation of group health insurance coverage and benefits for a defendant whose marriage is dissolved. Federal law has similar provisions for coverage. These entitlements are temporary and must be noted as elements to be considered in determining alimony.
Her need for proper and major medical insurance coverage is of foremost importance.
As a child she was afflicted with rheumatic fever. She claims pain now from arthritis. She also claims presently to be treated for Lyme's Disease. She has medication for each of the three mentioned complaints. Before the court she was alert and well oriented.
His station in life is that he runs a prosperous, still growing, well organized commercial wholesale produce business. CT Page 6902
Her station in life is that she was a housewife who gave birth to five children and performed her duties as a wife and mother for over thirty years. She has no skills or formal training.
His occupation was and is that of "the floor man" or person in charge of a well run, highly successful business. The court is confident that the claimed recent one time financial set-back will be overcome and that the future of his business is bright.
Her occupation as a wife, mother, and caretaker of five grown children has no market value considering her age.
He has the resources for substantial income in the future. His corporation's gross sales have increased over the past two years. Two of his sons are no longer employed by the corporation and no longer draw bonuses and/or salaries comparable to his, resulting in a decrease in expenses. Fruits and vegetables are necessities and should escape any major impact from our present recession.
Her only source of income in the immediate future is by way of alimony and/or the sale of whatever property she may be awarded hereinafter.
His vocational skills and employability are apparent based on a lifetime of experience in the fruit and produce wholesale business and must be classified as excellent.
Her history as a housewife, mother, and caretaker of children, at her age, warrant a negative conclusion on prospective employability. Any employment would be at entry level or minimum wage.
Their respective "estates" are detailed in their financial affidavits both dated August 1, 1991 on file and summarized above.
Their respective liabilities are detailed in their financial affidavits. The court must direct its attention to the needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.
Her opportunity for future acquisition of capital assets and income are practically non-existent. There is no evidence of any such possibility except from their joint assets or his estate.
Her needs are for shelter, food, insurance, etc., i.e. all necessities of life. CT Page 6903
His opportunity for future acquisition of capital assets and income is unlimited, controlled only by his age factor.
His needs are adequate shelter and an appropriate domestic life.
A final consideration under 46b-81 is the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Since they married while very young, they had very limited material assets. His father made gifts to both of them as husband and wife. This was an old-fashioned marriage founded on the vows of "share and share alike." She dedicated her life to the home and their children. He dedicated his life to the family business as the means to support their family.
The inescapable conclusion is that the contribution of each of the parties in the acquisition, preservation or appreciation in values of their combined estates is evenly balanced.
A decree may enter on the cross complaint dissolving the marriage on the finding that the marriage has broken down irretrievably.
Remaining prayers for relief to be ruled on are: (1) property distribution, (2) alimony, and (3) attorney's fees and litigation expenses.
For the immediate future the issue of alimony depends on the continuation of his family business which is his main source of income. The business "operates" under the name of Carbonella 
DeSarbo, Inc. and it owns 500 shares of New Haven Food Terminal. The Carbonella Family owns 50% of this operating corporation. Joseph DeSarbo Brothers, Inc. owns the other 50% of this operating corporation.
The plaintiff in this case owns 90% of Joseph DeSarbo 
Brothers, Inc. and his mother, Rose DeSarbo, owns the remaining 10%.
In the court's view, his ability to pay alimony under C.G.S.46b-82 is contingent on the continuation of the business under its present corporate structure.
In the past his yearly salary plus compensation for unused vacation time approximated $42,500.00. Year-end bonus payments for him and the other officers of Carbonella DeSarbo, Inc. approximated $40,000.00 each. Each officer enjoyed the use of company owned cars with operating expenses paid. A conclusion is that his compensation plus bonus will be CT Page 6904 approximately $82,500.00 each fiscal year. Two of his adult sons no longer enjoy similar benefits because they no longer work for the operating corporation and are no longer financial burdens to the corporation, thus enhancing the profit factor and his yearly bonus.
On this figure of $82,500.00, alimony of $800.00 per week for 52 weeks equals $41,600.00 a year and would leave him $40,900.00.
An order of $800.00 per week alimony may enter starting August 30, 1991 and continuing until she remarries or said order is modified, suspended, reduced or terminated under C.G.S.46b-86 (b). The present value of this order, considering that she has a life expectancy of between 25-30 years, is extremely difficult to calculate. The present value of the plaintiff's interest in Carbonella DeSarbo and Joseph DeSarbo Brothers, Inc. (including shares in New Haven Food Terminal, Inc.) is extremely difficult to calculate. She needs alimony. He needs his employment as it presently exists to pay alimony. Earning capacity and prospective earnings are factors considered in awarding alimony. Arrigoni v. Arrigoni, 184 Conn. 513, 515
(1981); Toby v. Toby, 165 Conn. 742, 749 (1974).
She has appropriated funds, carried in their joint names before and after the service of process in this suit, and disbursed about $50,000.00 of same for her living expenses and personal needs, legal expenses for the defense of this law suit, legal fees and expenses for the defense of their son's case, the cost of the rehearsal dinner and wedding expense for another son, and gifts to their children. There is no evidence that any of these funds were divested for other than family purposes.
Her unilateral appropriation of these funds carried in joint names and disbursement for family purposes has essentially extinguished them. At the end of the trial on August 1, 1991 very little cash was available to her. Any suggested retroactive penalty, albeit she may or may not have failed to pay proper respect to an order of the court regarding joint funds, would serve no useful purpose. Plaintiff has not pursued a contempt finding with respect to her activities concerning these funds.
The issues to be considered concerning the distribution of property must be divided into personal property and real estate. An exact division on a fifty-fifty basis is not possible when one considers that an order of weekly alimony has been issued above.
An order may enter that —
(1) The Dillon Street residence and contents except his personal items be transferred to her. CT Page 6905
(2) The escrow balance from the 143 Carlisle Street home plus any accumulated interest be transfered to her.
(3) The following savings accounts, plus accumulated interest, be transferred to her:
a) N.H. Savings Bank #51442
b) First Bank #015-91307220
c) Conn. Savings #00-049361
d) Conn. Savings #4-9361
(4) The Merrill Lynch CMA Account be transferred to her.
(5) The Prudential Bache Account be transferred to her.
(6) The jointly owned stocks to be transferred to her, viz. 550 shares American Precision, 52 shares Drescher, Inc., 10 shares Bristol Myers-Squibb, and 540 shares Shawmut National Corp.
(7) He transfer to her one-half of the value of the Retirement Fund.
The approximate market value of these assets is $600,000.00. The "spread" rides on the value of the household furniture and fixtures.
(8) He retains sole title, possession and control of 2906-2932 State Street and 81 Hubbard Place in Hamden.
(9) He retains sole control and beneficial use over his life insurance.
(10) He retains one-half of the retirement accounts.
(11) He retains control and beneficial use of the remaining bank accounts listed on his affidavit of August 1, 1991.
The fair market value of their assets (8, 9, 10 and 11) approximates $443,000.00. The plaintiff is the remainderman of a trust wherein his mother is the life beneficiary. That trust has no present value and is not considered an asset of the plaintiff at this time.
Plaintiff has, however, interests in J. DeSarbo Brothers, Inc. (90%) which has an interest in Carbonella DeSarbo, Inc. (50%). Carbonella DeSarbo, Inc. participates as a shareholder CT Page 6906 in the New Haven Food Terminal. The net effect of this three-step ownership and operational structure of plaintiff's remaining assets is that it presents a difficult problem of valuation. Carbonella DeSarbo, Inc. as a shareholder and participant in the ownership and operation of New Haven Food Terminal enjoys the unique privilege of being able, with its co-owners and co-participants, to control the rent it pays for its warehouse space. This contingent factor could impact on the bottom line or profit of Carbonella DeSarbo, Inc. and ultimately on the plaintiff's salary and bonus.
The issues presented by these facts and the problems of valuation in this inextricable corporate, organizational and operational stew need not be resolved at this time.
The court concludes that in the words of Justice Hull in Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 59
(1990) — "We need not, however, try to unscramble this particular judicial omelet."
Plaintiff's ability to obey the above alimony order depends on his continued employment under the present corporate, organizational structure.
The division of assets above stated, plus the alimony ordered, is considered to be fair and equitable at this time in view of the present evidence.
Plaintiff is ordered to pay the balance of attorney's fees and litigation expenses of defendant plus costs. Each party must pay their respective remaining liabilities.
The keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage is the power and the conscious objective to act equitably.
Judgment may enter as set forth above.
John N. Reynolds State Trial Referee