## Harvey Koizim v. Ellen Koizim

Cotter, C. J., Bogdanski, Peters, Parskey and Wright, Js.

Argued April 10—decision released July 15, 1980

*Ira B. Grudberg,* with whom were *Jonathan Katz* and, on the brief, *Howard A. Jacobs* and *John W. Watson,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom was *Kevin R. Murphy,* for the appellee (defendant).

Parskey, J. In this action for the dissolution of a marriage the trial referee rendered a judgment dissolving the marriage based on intolerable cruelty on the part of the plaintiff husband. He was ordered

to pay lump sum and periodic alimony together with a substantial allowance for counsel fees. The present appeal attacks the lump sum alimony award as excessive, and challenges the allowance for counsel fees and the authority of the referee to issue a post-judgment restraining order.

The trial court articulated the factual basis for its decree in its memorandum of decision. See Practice Book, 1978, § 3060B. Although at trial the factual issues were vigorously disputed, for the purpose of this appeal the plaintiff does not seriously question the underlying facts. He contends rather that even if the facts found by the trial court are assumed to be true, the orders regarding lump sum alimony and counsel fees constituted an abuse of discretion.

The parties were married in 1950, a year before the plaintiff graduated from law school. The defendant considered the marriage a happy one until her husband informed her, in 1976, that he was dissatisfied with their relationship. A month later she was shocked and dismayed to learn from her husband that throughout their marriage he had been unfaithful to her. Because the plaintiff still professed his love for her, the defendant tried to make the best of the disastrous situation. The plaintiff, for his part, resumed his errant ways until the final separation in March, 1977.

While over the years the plaintiff contributed a substantial amount of money to the marriage, the defendant's contributions, both financial and otherwise, were very significant. In 1952 and 1953, as a result of a gift and an inheritance from her father, the defendant contributed $94,000 to the marriage. This money was invested primarily in the homes

built by the parties. The value of this contribution has greatly appreciated over the course of the marriage.

The defendant also made substantial contributions to the plaintiff's careers in law and banking. She kept the books of his law partnership for a number of years. For approximately four years she received no payment for her work, although thereafter she was given a small salary. By performing a rather complicated economic survey she directly contributed to the formation of the County Federal Savings and Loan Association, an institution in which the plaintiff is a director and major stockholder.

The trial court ordered the plaintiff's interest in the family residence to be transferred to the defendant, with all mortgages on the property to be removed by the plaintiff within three years. The furnishings in the residence were to be the sole property of the defendant, but the couple's art collection was to be divided equally either by mutual determination or by sale. In recognition of the defendant's interest in the shares of stock of the County Federal Savings and Loan Association and in other capital assets of the marriage, the plaintiff was ordered to pay the defendant $60,000 per year for a period of ten years. Finally, the court ordered periodic alimony of $4000 per month and an allowance for counsel fees in the approximate amount of $55,000.

## The Alimony Awards

One of the factors which the court considered in arriving at its lump sum award was the defendant's equitable 50 percent interest in the shares of the County Federal Savings and Loan Association.

The original shares, purchased solely in the plaintiff's name in December of 1976, were financed by means of a promissory note to City Trust cosigned by the defendant and secured by a mortgage on the jointly owned family residence. The defendant testified that the stock was supposed to be in joint names and that she relied on her husband's representation in this respect. The court found that a confidential relationship existed between the parties and that the plaintiff, by purchasing the stock solely in his own name, abused that relationship. Relying on this abuse and principles of constructive trust, the court fixed the defendant's interest in the stock at 50 percent.

The plaintiff contends that because no fraud was shown, there was no basis for the imposition of a constructive trust. The plaintiff does not challenge the existence of a confidential relationship between the parties.[1] Where such a relationship exists, proof of fraudulent intent is not a condition precedent for the imposition of a constructive trust. *Hieble* v. *Hieble,* 164 Conn. 56, 63, 316 A.2d 777 (1972). Indeed, in such cases the burden of proof rests on the party denying the trust to negate it by clear and convincing evidence. Id., 62. The trial court was justified, on the basis of the evidence, in treating the shares of stock in the County Federal Savings and Loan Association as being jointly owned by the parties.

---

[1] The court clearly was justified in concluding that a confidential relationship existed. In addition to being the defendant's husband, the plaintiff was a banker and a lawyer. The defendant was accustomed to being guided by his judgment and was justified in placing confidence in him in the reasonable belief that he was acting in her best interest. See *Harper* v. *Adametz,* 142 Conn. 218, 225, 113 A.2d 136 (1955); *Worobey* v. *Sibieth,* 136 Conn. 352, 359, 71 A.2d 80 (1949).

In reviewing the amount of the various orders rendered in this case to determine whether they are excessive, an overview of the parties' finances, both before and after the awards, will be helpful. We note at the outset, however, that there are no simple formulae for determining whether distribution of a certain percentage of family assets to one spouse is excessive in any given case. With that in mind, we turn to the data. The plaintiff calculates the total assets of the marriage at $1,797,187. Not included in this total is his interest in the Beatrice Koizim trust, which the plaintiff himself values at $400,000, his $6000 interest in a condominium, and a $10,000 Keogh Retirement Fund. Including these additional items the family asset total is $2,213,187. The defendant, using additional items and different valuations, arrives at a total of $2,519,854.

The plaintiff calculates the value of the assets ordered distributed to the defendant, excluding the periodic alimony, to be about $1,410,000. This total includes the lump sum order valued at $600,000. Since this sum is payable in equal instalments over a period of ten years the $600,000 figure does not accurately represent the true value of this portion of the total award. If one were to discount the lump sum award at an interest rate of 8 percent,[2] the value of the lump sum award at the time of the order would approximate $400,000. Am. Jur. 2d, Desk Book, p. 445. If we deduct the difference of $200,000 and exclude the $55,000 allowance for counsel fees, which we consider separately in this opinion, the total value of the assets distributed to the plaintiff represents 52 percent of the total assets as calculated by the plaintiff and 46 percent of the total

[2] There was evidence that the interest on the promissory note to City Trust was 8.5 percent.

assets as calculated by the defendant. Calculated another way, the value of assets transferred and actual payments due during the first year, excluding counsel fees, would be about $858,000. This represents 39 percent of family wealth, according to the figures used by the plaintiff.

The standards for appellate review in dissolution proceedings are the same whether the subject matter is the assignment of property or periodic alimony. *Fucci* v. *Fucci,* 179 Conn. 174, 182, 425 A.2d 592 (1979). Taking into account the criteria set forth in General Statutes § 46b-81, the trial court has broad discretion in making an equitable distribution of family assets. *Chambliss* v. *Chambliss,* 171 Conn. 278, 279, 370 A.2d 924 (1976). The test is whether the court could reasonably conclude as it did. *Aguire* v. *Aguire,* 171 Conn. 312, 314, 370 A.2d 948 (1976).

The plaintiff showed a cash flow annual income of $208,000. The defendant maintained that the correct figure was approximately $250,000 or $233,000 if noncash fringe benefits are eliminated. The defendant's annual income is about $1000, her expenses $85,000. There was evidence that during the marriage the annual expenses were $90,000. If we take into account the financial circumstances of the parties, including the plaintiff's capacity to generate substantial income, and apply the statutory criteria, the trial court's order of periodic alimony and lump sum assignment of property was fair and equitable.

The plaintiff's characterization of the court's property and alimony orders as "outrageously excessive" and "mind boggling" is more pejorative than persuasive. There was evidence that the

plaintiff had an annual income of $250,000 and that after distribution he would be left with capital assets worth, on the basis of his own evaluation of the Beatrice Koizim trust, at least $1,700,000. Thus, even if we ignore the plaintiff's major and minor transgressions and look solely at the other statutory criteria, especially the meager capacity of the defendant to enhance her financial situation and the contributions that each spouse made to the marriage, to the accumulation of assets and to the substantial capacity of the plaintiff to generate additional income, the court's orders are neither mind boggling, outrageously excessive nor unreasonable. Because we do not sit at nisi prius in domestic relations matters, of necessity in the overwhelming number of cases we must accord great weight to the trial court which has a distinct advantage "in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant." *Fucci* v. *Fucci,* supra, 180–81.

Our refusal to upset the property and alimony awards in this case does not constitute an abdication of our responsibility for appellate review. To the contrary it evidences a recognition on our part that by constitutional charter we are limited to corrections of errors of law; *Styles* v. *Tyler,* 64 Conn. 432, 450, 30 A. 165 (1894); and that, therefore, in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence.

### Post-Judgment Orders

The plaintiff attacks certain orders rendered after the judgment in this case relating to the preservation of security. To secure the obligations

imposed by the property division, the court ordered an assignment, as collateral, of the plaintiff's interest in a real estate partnership and the Beatrice Koizim Trust, and a pledge of 180,375 shares of the County Federal Savings and Loan Association stock. On July 19, 1978, the court granted the defendant's ex parte application for a temporary restraining order preventing the plaintiff from divesting or encumbering his interests in the property described above. A permanent injunction to the same effect was issued on August 31, 1978. The plaintiff has attacked these orders on two grounds.

The plaintiff first claims that the referee exceeded the scope of his jurisdictional authority by fashioning equitable orders after judgment had been rendered. A referee's power derives from General Statutes § 52-434,[3] which allows a referee to "exercise the powers of the superior court in respect to trial, judgment and appeal . . . ." This grant of authority necessarily embraces the power to render such orders as may be required to protect the integrity of the original judgment. That the orders were equitable in nature does not alter this conclusion because a referee has the same powers as the referring court. General Statutes § 52-434; *Prince* v. *Sheffield,* 158 Conn. 286, 291, 259 A.2d 621 (1969). See *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975). The plaintiff's reliance on Practice Book, 1978, § 458, which reserves to the referring court jurisdiction to hear and decide pendente lite or contempt matters, is misplaced

[3] General Statutes § 52-434 provides in part as follows: "The superior court may, with the written consent of the parties or their attorneys, refer any case pending before such court in which the issues have been closed to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in such case."

because these orders related to a property division; they were not pendente lite orders. See *Stern* v. *Stern*, 165 Conn. 190, 196, 332 A.2d 78 (1973).

The other infirmity asserted by the plaintiff respecting the post-judgment orders is that they were inappropriately granted ex parte and, further, that this ex parte contact between defendant's counsel and the referee tainted the factfinding process. The defendant's application, supported by an affidavit, alleged that the plaintiff had arranged to borrow $600,000 from the Beatrice Koizim Trust, assigning as collateral his interest in S & K Associates. This action directly contravened the court's directive, set out in its memorandum of decision, that the plaintiff's interest in these assets not be encumbered or divested. Under these circumstances we cannot say that the court abused its discretion in issuing a temporary restraining order. See General Statutes § 52-473; *Phoenix Ins. Co.* v. *Carey*, 80 Conn. 426, 431, 68 A. 993 (1908). With respect to the ex parte contact, which consisted of a telephone conversation in which permission was sought to submit an application for the restraining order discussed above, it was entirely proper. Such contact is required in order to obtain an ex parte restraining order. As such it is contemplated by § 52-473 and does not offend the Code of Professional Responsibility, DR 7-110 (B). The subsequent rulings of the court were not "tainted" by this contact because the merits of the pending motions were never discussed.

## COUNSEL FEES

The plaintiff quite properly challenges the trial court's award of counsel fees and expenses. Counsel fees are not to be awarded merely because the

obligor has demonstrated an ability to pay. "Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds. *Krasnow* v. *Krasnow,* 140 Conn. 254, 265, 99 A.2d 104 (1953); *Steinmann* v. *Steinmann,* 121 Conn. 498, 504, 186 A. 501 (1936)." *Ridolfi* v. *Ridolfi,* 178 Conn. 377, 380, 423 A.2d 85 (1979). In making its determination regarding attorney's fees the court is directed by General Statutes § 46b–62 to consider the respective financial abilities of the parties. *Murphy* v. *Murphy,* 180 Conn. 376, 380, 429 A.2d 897 (1980). Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. Because the defendant had ample liquid funds as a result of the other orders in this case, there was no justification for an allowance of counsel fees.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.