CHELSO ARRIGONI *v.* DONNA ARRIGONI

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued April 2—decision released June 30, 1981

*William C. Kroll,* for the appellant (plaintiff).
*Theodore Poulos,* for the appellee (defendant).

SHEA, J. This is an appeal from a judgment of a state referee dissolving the marriage of the parties, awarding the defendant wife lump-sum alimony of $75,000 payable within one year, periodic alimony of $100 per week for five years, and counsel fees of $5000. The issue, as framed by both parties in their briefs, is whether the trier abused his discretion in making these awards.

The parties had been married about thirteen years at the time of trial. They had no children. The defendant wife was severely injured in an automobile accident in 1976 which rendered her permanently disabled, unemployable, and in need of continuing medical care. Her financial affidavit indicated that she had no income and that her only assets were a half-interest in the household furniture, valued at $5000, and $87,759.39[1] in cash, most of which represented the balance remaining from a settlement of her automobile accident case. The plaintiff husband does not seriously dispute that the evidence indicates that the cost of his wife's support and medical care in the future will far exceed her financial resources even as supplemented by the amounts to be paid under the court order.

[1] An additional sum of $9000 from the settlement was being held in escrow to represent the plaintiff husband's possible interest in the settlement. At the trial the plaintiff relinquished any interest in this sum to the defendant.

The principal dispute concerned the ability of the plaintiff husband to make the payments ordered. With respect to the periodic alimony award of $100 per week for five years, the plaintiff in his financial affidavit stated that his current net weekly income from employment was $134.90 and that he received also $9.62 per week as stock dividends. The trial court concluded that the plaintiff could find employment as a pharmacist at a "very good salary" if he chose to do so. At the time of trial he was working only part-time as a pharmacist and was also conducting a woodworking business which at that time yielded no net income. He had worked steadily as a pharmacist for eleven years prior to the marital problems which developed after his wife's accident. The contention of the plaintiff that the court must have relied upon the presumed wealth of his mother, who had made several gifts to him during the marriage, is not supported by the record. The memorandum of decision recognizes that her past generosity may not continue in explaining the failure to meet fully the financial requirements of the defendant wife. "In a proper case the amount of alimony awarded may be based upon earning capacity or prospective earnings rather than actual earned income." *Tobey* v. *Tobey,* 165 Conn. 742, 749, 345 A.2d 21 (1974); see *Bilosz* v. *Bilosz,* 184 Conn. 90, 441 A.2d 59 (1981). We conclude that the order of periodic alimony is not excessive in relation to the plaintiff's earning capacity upon which it appears to have been based.

With respect to the award of $75,000 to be paid in one year, the main issue raised is whether the trier was justified in finding that the plaintiff's net worth as represented in his financial affidavit was grossly understated. One dispute centers about

whether the plaintiff still retained an ownership interest in a forty-two foot boat which he had purchased for $76,000 in 1977, and which he claimed to have sold for $65,000 in September, 1978, and to have used the proceeds to repay some loans from his mother and to defray some personal living expenses. He testified that the boat had been sold to the woman he was living with at the time of trial and that she had subsequently sold the boat to someone in Rhode Island. Two investigators employed by the defendant testified, however, that the plaintiff had told them he still owned the boat at the time of trial and kept it in South Carolina. The plaintiff made no effort to produce anything to corroborate his own testimony that the boat had been disposed of. The trier's decision against him upon this factual question is adequately supported by the evidence.

The plaintiff's appraiser gave a value of $110,000 for the real estate which he owned as compared to the $130,000 value estimated by the defendant's appraiser. There had been no mortgage on the property until 1978, after the dissolution action had started. The plaintiff testified that he placed a mortgage with a bank to borrow $45,000 for the purpose of repaying loans which his mother had made to him. He said that he still owed his mother $65,000 at the time of trial. It appeared that his mother placed an attachment on the property of the plaintiff in the two-month period which intervened between the first and second days of trial. No other evidence in support of the plaintiff's testimony about the existence of this indebtedness was presented. Under the circumstances the determination

of the trier that the sums advanced to the plaintiff by his mother were gifts rather than loans cannot be disturbed.

The resolution of these factual issues against the plaintiff leaves him with a net worth more than sufficient to enable him to satisfy the payments ordered. Except for his contention regarding his limited financial ability, the plaintiff does not question the propriety of the lump-sum alimony award under the criteria of General Statutes § 46b-81 (c).[2] Our examination of the evidence indicates that such a claim would have no merit.

The plaintiff husband challenges the $5000 allowance of counsel fees for his wife upon the ground that she had sufficient liquid assets to pay her own lawyer. See *Koizim* v. *Koizim,* 181 Conn. 492, 500–501, 435 A.2d 1030 (1980). Just before the trial began the personal injury claim of the defendant wife which arose out of her automobile accident had been settled, resulting in her receipt of approximately $97,000. During the previous two years while the case had been in court, she had no financial resources and no counsel fees had been paid.

Prior to the enactment of General Statutes § 46b-62, which furnishes a statutory basis for the

[2] General Statutes § 46b-81 (c) provides as follows: "(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

award of counsel fees, we followed the common-law rule that a wife was not entitled to counsel fees if she had sufficient funds to pay the expenses of litigation. *Murphy* v. *Murphy,* 180 Conn. 376, 380, 429 A.2d 897 (1980). "The basis of the allowance is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife she has a real interest but which is usually within the control of the husband." *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501 (1936). Nevertheless, we had expressed a preference that the award be deferred until after the services of counsel had been rendered, usually at the time of judgment, when their value could best be ascertained. *England* v. *England,* 138 Conn. 410, 417, 85 A.2d 483 (1951); *Santangelo* v. *Santangelo,* 17 Conn. Sup. 148, 149 (1950). At the point where judgment is rendered, however, the rights of a wife ordinarily require no further protection and any allowance for the services already rendered by counsel would conflict with the premise of the common-law rule. Such a rigid application of the rule has been followed in some jurisdictions. *Wilson* v. *Wilson,* 33 Cal. 2d 107, 199 P.2d 671 (1948); *Beadleston* v. *Beadleston,* 103 N.Y. 402, 8 N.E. 735 (1886); Keezer, Marriage and Divorce (Morland 3d Ed.) § 612; 27A C.J.S., Divorce § 216b; see *Morgan* v. *Morgan,* 104 Conn. 412, 417, 133 A. 249 (1926). The deferral of litigation allowances until after trial has been the approved practice in this state. *England* v. *England,* supra, 417; *Santangelo* v. *Santangelo,* supra, 149; see Gordon, "Alimony and Allowances," 27 Conn. B.J. 282, 283–84 (1953).

The enactment of § 46b-62 has dispelled the gender-oriented assumptions of the common-law

rule by providing that "the court may order either spouse to pay the reasonable attorney's fees of the other . . . ." As we recognized in *Murphy* v. *Murphy,* supra, the statute now establishes the basis upon which such awards are to be made, and the matters to be considered are essentially the same as those involved in making alimony awards as set forth in General Statutes § 46b-82. The nature of the criteria specified, which include "the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties," indicates that a definitive award of counsel fees should not ordinarily be made until after a trial where evidence relating to those considerations has been presented. The fact that the defendant wife did not seek an award of counsel fees at an earlier time when her impecunious condition would have warranted favorable action under the common-law rule gives her no special status, however, when an allowance is included in the judgment. It is the circumstances of the parties at the time of trial which control. The memorandum of decision indicates that only the statutory criteria were weighed in making the financial orders, including the order for counsel fees. The decision of the trier to allocate a portion of the total sum awarded to the payment of the defendant's counsel fees should be of no concern to the plaintiff, provided that the total he will be obliged to pay is fair. Although in *Koizim* v. *Koizim,* supra, 501, we stated that where a wife had "ample liquid funds" to pay her own counsel fees she should be permitted to do so, we did not mean to imply that no allowance should be made if a party has sufficient cash to meet the attorney's bill. In

relying upon *Koizim* the plaintiff has overlooked the significance of the word "ample." In the case before us the trier did not regard the defendant's financial resources, even when supplemented by the financial orders contained in the judgment, as adequate for her future needs, particularly because of her permanent disability and the continuing cost of her medical care. Under these conditions a conclusion at the appellate level that she had "ample" funds to pay her attorney would be wholly unwarranted. We decline to disturb the award of counsel fees.

There is no error.

In this opinion the other judges concurred.