[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action, returnable November 4, 1991 for a dissolution of marriage and for other relief brought by the plaintiff wife against the defendant husband. The parties were married on May 29, 1972 at Buffalo, New York. After periods of temporary estrangements the parties separated in October of 1991 and have remained so separated to the present time. For all intents and purposes this is effectively a nineteen and half year marriage.
The parties have three children as follows:
 Kara Graziano — date of birth September 2, 1977; age 16 Steven Graziano — date of birth October 3, 1980; age 13 Austin Graziano — date of birth July 28, 1983; age 10
These children seemingly appear to enjoy good health. The children have been attending the Children's Divorce Center in Woodbridge and the plaintiff husband wishes the children to continue at the Children's Divorce Center. The court suggests that the children continue at the Children's Divorce Center as the need arises in order to make their adjustment to being the children of divorced parents smoother. This will lessen the psychological impact and hopefully pay dividends in their later years.
The plaintiff, Kathleen Graziano whose date of birth September 12, 1950, is 43 years of age. She attained a Bachelor CT Page 8475 of Science Nursing Degree on May 28, 1972. The plaintiff worked in the nursing field in the initial years of their marriage until approximately 1977 at which time their oldest child, Kara was born. Thereafter she continued to be active as what she categorized as a general manager at her husband's dental practice. Her activities, on a part time basis, included personnel management, salary calculations, working schedules, record keeping, billing etc. She was paid a salary sufficient to fully fund an IRA on a annual basis.
In 1989 the plaintiff decided to obtain a degree in marriage and family therapy and recommenced her education. This is a full time endeavor involving classes, clinics and patients. She somehow manages to juggle her education schedule with the demands of homemaking and motherhood, and continues as a mother and homemaker to the present time.
The plaintiff anticipates completing her degree in marriage and family therapy in December of 1994. Thereafter she will have to complete two thousand hours of clinical internship. She anticipates becoming certified by the State of Connecticut in 1996. Once the plaintiff is certified as a marriage and family therapist, she anticipates earning a minimum of $30,000.00 per year. Defendant's counsel asked the plaintiff if she would consider reentering the nursing field even on a part time basis which of course would necessarily postone [postpone] her efforts and time schedule to obtain certification as a marriage and family therapist. The plaintiff was adamant in her refusal to consider even part time nursing and is determined to continue her education and certification as a marriage and family therapist which she has prioritized over all her other responsibilities.
The court also notes that the plaintiff was an active participant in the Downtown Cabaret Theater and also was active in producing summer show at Fairfield University. During the wife's participation with the Downtown Cabaret Theater she met one Greg Swan in 1985. This relationship with Greg Swan proved to be a distraction in the stability of the parties's marriage, as his presence appears to be more than a casual fellow member of the Downtown Cabaret Theater group. The plaintiff is quite smuggly impressed with herself and with her achievements. However, the court notes that her achievements and activities have left behind her a wake of flotsam including a broken down marriage, three children who do not have the undivided attention their mother, and a torn and troubled former husband. CT Page 8476
The defendant husband whose date of birth is April 24, 1948, is 45 years of age. He enjoys good health. He holds a Bachelor of, Arts Degree in biology from Suny at Buffalo, New York. In addition he also holds a dental degree from said school. He completed his dental training in 1974 and set up a private practice in 1975 with one Greg Egnaczyk, with whom he still continues to practice under the firm name of Huntington Family Dental Group. The defendant is a type A hyper person, working long intense hours at his dental practice. It appears that his main goal is to earn money and acquire assets. As a consequence he has, to large degree, deferred the child rearing responsibilities and family responsibilities to the plaintiff wife. Although his wife provided some assistance, it must be concluded that he is the main force behind the acquisition of the parties assets and their financial resources including the production of income. His hobbies include skiing and sailing.
As regards his wife the defendant appears to be demanding and expected her to stylize her life style similar to his parents. In addition the defendant husband appears to demonstrate an erratic temper.
The defendant husband admits to one sexual encounter with one Annette, a fellow employee. This occurred in October 1989. The defendant professes to wear a hair shirt of guilt. Despite feeble explanation, the court will not condone this conduct.
Despite attempts at reconcilation, [reconciliation] periods of reconcilation, [reconciliation] and overtures towards "turning over a new leaf" this marriage has truly broken down. The disintegration of their marriage took place over many years like pernicious periodontal disease, subtle but steadily progressing to their mutual detriment. Both parties are substantially at fault.
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize right to alimony, General Statutes 46b-82; Thomas v. Thomas, 158 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of CT Page 8477 financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of acquisitions of assets of each of the parties, (citation omitted), no single criteria is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account." Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings each of these statutory criteria." (46b-82 and 46b-81 (c) of the General Statutes.) Weiman v. Weiman, 188 Conn. 232, 234
(1982).
Further "In a proper case the amount of alimony awarded may be based upon earning capacity or prospective earnings rather than actual earned income." See Arrigoni v. Arrigoni,184 Conn. 513, at 515 (1982) Tobey v. Tobey, 165 Conn. 742, 749
(1974) Bilosz v. Bilosz, 184 Conn. 90 (1981).
This court has considered all of the criteria46b-82 and 46b-62 of Connecticut General Statutes together with all of the credible evidence in this case and the case law of the State of Connecticut in order to determine the proper orders in this case. The court in addition to the foregoing findings CT Page 8478 finds as follows:
1) There is the requisite jurisdiction
2) The allegations of the complaint have been proven and are true.
3) There has been an irretrievable breakdown of the marriage.
Therefore the court enters the following orders:
1) A decree of dissolution of marriage on the grounds of irretrievable breakdown.
2) The parties shall have joint legal custody of the three minor children whose principal residence shall be with the plaintiff wife. The defendant father shall have reasonable, flexible, liberal and generous rights of visitation with said children which shall include but not be limited to holidays and vacations. Neither party shall do anything or say anything to denigrate the other parent in the eyes of the children. The parties are hereby ordered to cooperate with each other and to take into account each other's work and academic schedules together with the children's social, civic and school activities, in order to achieve meaningful, positive and constructive visitation.
3) The defendant shall pay as child support the sum of $8,000.00 per year per child on the 15th day of each month until such child shall attain the age of 18 years or is otherwise emancipated. In addition the defendant shall maintain the existing health insurance program, or better, (but never less) for the minor children. All uncovered and uninsured medical and/or dental expenses including deductibles, incurred by or on behalf of the minor children shall be divided equally between the parties.
4) The defendant shall transfer by quit claim deed all his right, title, interest in and to the marital residence located at 66 Dogwood Lane, Trumbull, Connecticut to the plaintiff. The plaintiff shall take said property subject to the first mortgage and the home equity loan and she shall be responsible for the payment of same. In addition the plaintiff shall be responsible for all carrying charges on said home including but not be CT Page 8479 limited to the payment of the aforesaid first mortgage equity loan, homeowner's insurance, real estate taxes and maintenance and shall indemnify and hold harmless the defendant against the same.
5) In accordance with the stipulation of the parties, it is ordered that the plaintiff wife shall retain the contents of the real estate identified as 66 Dogwood Lane, Trumbull, Connecticut with the exception of the table saw and any personal belongings owned by the defendant such as clothing, personal items and toiletries. The defendant shall remove said items including table saw on or before January 1, 1994 or otherwise they will be deemed abandoned.
6) The plaintiff shall transfer by quit claim deed all her right, title and interest in and to the condominum [condominium] located at 710 Styles Brook, Stratton, Vermont to the defendant, subject to any encumbrances thereon. The defendant shall be responsible for all carrying charges incident to said condominium including payment of any mortgage thereon for which he is responsible, condominium charges, insurance charges, real estate taxes, and maintenance and shall hold the plaintiff harmless with respect to the same including any deficiencies.
7) The plaintiff shall remain the owner of the 1989 Audi Quatro and the defendant shall waive any interest therein.
8) The defendant shall remain the owner of the 1986 Toyota and the plaintiff shall waive any interest therein.
9) The defendant shall cooperate with the plaintiff in her obtaining medical insurance through COBRA at her sole option and further she shall be responsible for the payment of the premiums incident to said health insurance program.
10) As regard life insurance the defendant shall maintain and keep in full force and effect that said life insurance as listed on his affidavit dated the first day of March 1993 in the amount of $500,000.00. Said life insurance be maintained on or behalf of the wife and children during such terms as he is obligated to provide child support and/or periodic alimony as herein provided. However, in the event he remarries during such time the defendant husband is obligated to pay child support and/or periodic alimony, the defendant may at his sole option reduce the life insurance coverage for and on behalf of his children CT Page 8480 and former wife to an amount not less than $300,000.00.
11) Each party shall be responsible for their own debts as listed on their respective financial affidavits.
12) As regards attorney's fees the husband is hereby ordered to make a contribution in the amount of $5,000.00 towards the plaintiff's counsel fees, payable in consecutive monthly payments of $1000.00 each commencing in January of 1994. This is in addition to any previous monies paid by or claimed to have been paid by the defendant.
13) The defendant shall pay as periodic alimony the sum of $20,000.00 per year ($1,666.67 per month) commencing October 15, 1993 and on the 15th day of each month until July 31, 2001. The court intends that the term of payment of periodic alimony is not modifiable but shall otherwise terminate upon the happening of either of the following events, whichever occurs sooner.
A) Death of the defendant
B) Death of the plaintiff
C) The remarriage of the plaintiff
D) Cohabitation by the plaintiff with an unrelated male under the provisions of 46b-86 (b) of the Connecticut General Statutes.
In ordering durational periodic alimony the court has considered that the plaintiff wife believes that after she becomes established in the marriage and family therapy field she will be self-sufficient. This should take by reasonable standards approximately five years after she becomes certified plaintiff wife anticipates to be 1996. Further both parties in the pre-trial claims for relief have suggested durational alimony of the approximate length of time as ordered by the court.
14) The defendant shall be entitled to take as an income tax exemptions those exemptions incident to said minor children for both federal and/or state income tax purposes. Further the plaintiff shall cooperate with the defendant in signing such forms necessary in order to allow the defendant to claim the CT Page 8481 children as exemptions.
In considering said financial awards, especially child support and periodic alimony the court has taken into consideration and finds as a fact that the wife is capable of earning a minimum of $20,000.00 per year in the nursing field based on part time work of approximately 24 hours per week at a rate of about $16.00 per hour.
15) The defendant shall retain all his right, title, interest in and to Huntington Village Associates without any claim by the plaintiff.
16) The defendant shall retain all right, title interest which he has in and to the Huntington Family Dental Group without claim by the plaintiff.
17) The wife shall retain all her right, title and interest to the Pershing IRA as shown on her financial affidavit.
18) Defendant shall retain all right, title and interest to the profit sharing plan as shown on his financial affidavit dated March 1, 1993.
19) The plaintiff shall retain all right, title and interest to the bank accounts shown on section D of her financial affidavit dated March 1, 1993, namely Shearson Lehman Brothers, Mechanic 
Farmers and Peoples checking account.
20) Defendant shall retain all right, title, and interest to the IRA shown on his said financial affidavit.
21) Defendant shall retain all right, title and interest to the silver dollars that is shown on his said financial affidavit.
22) Defendant shall retain all right, title and interest to loan to corporation as listed on his said financial affidavit.
23) Defendant shall retain all right, title and interest to the Derby Savings Bank checking and saving accounts as shown on his financial affidavit.
24) The parties are ordered to cooperate with each other in attempting to refinance both the first mortgage and the home equity loan incident to the real estate identified as 66 Dogwood CT Page 8482 Lane, Trumbull, Connecticut in an effort to obtain a more favorable interest rate and smaller total monthly mortgage payment(s). The approximate terms of said "new" mortgage should be as follows:
A. Term — 15 years
B. Interest — Rate 7 1/2 percent.
C. Points — not to exceed 2 points.
In the event the parties are able to obtain said refinancing all costs of refinancing will be absorbed and paid by the defendant husband. However his alimony payments shall be reduced by 55% of the amount saved between the total amount the existing mortgage payments (principal and interest only) and the principal and interest payment on the equity loan and the resulting mortgage payment, principal and interest only on the "new". By way of example assume the existing current combined mortgage payments (1st mortgage and equity loan is $2300/per month) and the parties obtain a new mortgage with a mortgage payment of $1900 per month (principal and interest only) the defendant would reduce the monthly periodic alimony by the amount of $220 per month (55% x $400).
The undersigned shall retain jurisdiction over this particular item in the event clarification is necessary.
So ordered.
JOHN W. MORAN, JUDGE