******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NELSON PENA *v.* LAURA GLADSTONE
(AC 37750)

Keller, Mullins and Lavery, Js.

*Argued May 18—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Tindill, J.)

*John H. Van Lenten*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom, on the brief,
was *Wendy Dunne DiChristina*, for the appellee
(defendant).

*Opinion*

KELLER, J. This appeal, and a related appeal, *Pena* v. *Gladstone*, 168 Conn. App. 141, A.3d (2016), an opinion we also are officially releasing today, involve successive motions for attorney's fees, considered by two different judges, and pertaining to a postdissolution custody proceeding in a contentious family case. The plaintiff, Nelson Pena, appeals from the trial court's, *Tindill, J.*, denial of his motion for attorney's fees to defend the related appeal brought by the defendant, Laura Gladstone. In that related appeal, the defendant has appealed from the order of the trial court, *Heller, J.*, which requires her to pay $75,000 to the plaintiff for attorney's fees related to past and future legal services rendered in connection with custody and visitation issues involving the parties' minor child.[1] In the present appeal, the plaintiff claims that the court (1) improperly determined that he had an earning capacity of $200,000 per year, and (2) abused its discretion in denying his motion for appellate attorney's fees. We affirm the judgment of the trial court.

The following facts and procedural history, portions of which are set forth in our opinion in the related appeal,[2] are relevant to this appeal. "The parties were divorced on August 17, 2010. The defendant was awarded sole legal and physical custody of the parties' minor child in accordance with Article II of a separation agreement executed by the parties. That lengthy and complex section of the agreement, regarding custody and visitation, as well as other parenting considerations, provided the plaintiff with liberal parenting time with the child. Litigation between the parties continued, however, after the entry of the dissolution judgment, and each party filed numerous motions relative to parenting issues. The situation deteriorated to the point where on July 28, 2014, the parties agreed to engage the services of Visitation Solutions to evaluate and facilitate the minor child's visitation with his father. A $3500 retainer was required for the use of this service; the plaintiff was ordered to pay 18 percent of the costs and the defendant was to be responsible for the remaining 82 percent. On May 6, 2014, the plaintiff, alleging the defendant's consistent interference with his relationship with the minor child, filed a motion for modification of legal custody, seeking joint legal custody, along with a motion for attorney's fees [postjudgment] that sought attorney's fees in an 'amount sufficient to prosecute the underlying motion for modification' . . . . He further alleged that he previously had 'earnings of less than $150,000 per year' and was unemployed as of May 2, 2014.

"The court heard the plaintiff's motion for attorney's fees on July 28, 2014, and issued its memorandum of decision on November 19, 2014. The court noted that the 'parties were before the court on the plaintiff's

motion for attorney's fees, postjudgment . . . in which the plaintiff seeks an award of attorney's fees for counsel to represent him in the parties' continuing dispute over custody and visitation, particularly in prosecuting the plaintiff's motion for modification for joint legal custody.'

"The court then found the following facts. 'The plaintiff testified that he had been unemployed since May, 2014. He was residing with his parents at the time of the hearing. According to his financial affidavit, the plaintiff has net weekly income of $15, representing residuals for his prior work in television and film. The plaintiff's financial affidavit reflects a total of $2785 in his checking and savings accounts and liabilities totaling $58,139.

" 'According to the affidavit of counsel fees submitted by the plaintiff's counsel, the plaintiff had paid $22,339 and owed $41,261 as of the hearing date. The plaintiff testified that he had not asked his parents for financial assistance to pay his legal bills. There was no evidence that the plaintiff's parents were willing or able to do so.

" 'The defendant is a managing director of Gladstone Management Corporation, a family company. According to her financial affidavit, her net weekly income from employment is $5569. She had $7742 in her checking account and retirement assets totaling $429,075 as of the hearing date. The defendant reported liabilities of $288,354 on her financial affidavit, $266,450 of which was a loan from the defendant's father for her legal fees in this action. The balance due to the defendant's father had increased by approximately $166,000 since January, 2014. . . .

" 'There is a significant disparity between the financial resources of the plaintiff and those available to the defendant. In addition to her own earnings and assets, the defendant has a loan facility with her father to fund her legal fees as necessary. The plaintiff does not have a similar line of credit arrangement with his family.

" 'If the plaintiff cannot afford an attorney to represent him in postjudgment custody and visitation matters, he may be unable to protect his interests and the best interests of the parties' child. . . . Where, as here, a minor child is involved, an award of counsel fees may be even more essential to insure that all of the issues are fully and fairly presented to the court. . . .

" 'The court finds that the attorney's fees and costs sought by the plaintiff are reasonable under the circumstances. An award that includes a retainer for future professional services is also appropriate here in view of the issues relating to the parties' child that are pending before the court.' . . .

"The court granted the plaintiff's motion and ordered that the defendant pay $75,000 toward the plaintiff's attorney's fees, which payment 'includes a retainer for

services to be rendered in the future, to counsel for the plaintiff on or before December 15, 2014." (Footnotes omitted.) *Pena* v. *Gladstone*, supra, 168 Conn. App. 143–46. The defendant appealed the court's award of $75,000 in attorney's fees.[3]

On December 19, 2014, the plaintiff filed a motion for attorney's fees to defend the appeal. In his motion, the plaintiff represented that he was unemployed and was not earning income, that he had substantial visitation expenses that he was unable to pay, and that he did not have any assets to enable him to pay counsel fees, transcript fees, and other costs to defend the appeal. On February 23, 2015, the court, *Tindill, J.*, held a hearing. At that hearing, the plaintiff and the defendant testified and filed their respective, updated financial affidavits. The plaintiff's financial affidavit was dated January 12, 2015, and the defendant's financial affidavit was dated February 23, 2015.

The plaintiff's testimony, which included extensive cross-examination, established that he was continuing to search for employment but had not received any job offers.[4] The plaintiff acknowledged that his mother allowed him to live with her rent free. He also indicated to the court, however, that he hoped soon to find employment, and the court concluded that he expected to secure employment soon. He told the court that he would accept a salary as low as $45,000 if he was offered a job to get his foot in the door, but he testified that a potential salary or other compensation was never disclosed or discussed during any of his recent job interviews. When asked about his past work in film and television, which was the source of a small amount of residual income in the amount of $15.05 per week, the plaintiff stated that he had acted in small parts on television shows, including Law and Order, and in commercials for McDonald's, Sprite, Eurovision, and Levi's, which had been shown on Spanish television. He did not indicate during his testimony that he was no longer able to obtain work in the entertainment field. Furthermore, he testified that he started receiving unemployment compensation in June or July, 2014, but then he contradicted his earlier testimony by saying that it commenced in September, 2014. He said that he did not know if he had received any retroactive payment for unemployment compensation in September, 2014, although he had lost his job in May, 2014. He advised the court that he previously had earned $90,000 working for major league baseball. The plaintiff also indicated that he was able to charge some of his weekly expenses of $130.25 on his credit card. He testified that his attorney was owed $53,219 and that he did not know if he had paid his attorney in the past two years, but he subsequently admitted that he had used his credit card to pay some of his attorney's fees in the spring or summer of 2014. He testified that he was not paying child support, or any part of the child's medical or child care

expenses. He further stated that he had paid 18 percent of the cost of visitation supervision by Visitation Solutions until the end of December, 2014, but none of the guardian ad litem's fees since the date of the dissolution judgment, although the guardian ad litem was still working on the case. The plaintiff defended his lack of financial support for the child by stating the following: "My child is well taken care of. My ex made a million dollars roughly last year in salary and had a bonus that was from her last financial affidavit of roughly $420,000."

On his financial affidavit, the plaintiff claimed a net weekly income of $15.05, a total of $580 in his checking and savings accounts, liabilities totaling $67,815.30, and assets of $24,698.74, which were contained in two IRAs. At the conclusion of the hearing, the plaintiff's attorney requested a $25,000 award of attorney's fees to defend the appeal.

The defendant, when called as a witness by the plaintiff, testified only briefly. She indicated that her salary as managing director of Gladstone Management Corporation was $22,333.34 per month, and that she had received a bonus of $422,222 in September, 2014. The defendant also stated that she had dividend and interest income. She was asked no further questions about her financial affidavit.[5] She indicated that she had paid her appellate attorney a full retainer of $10,000 to appeal Judge Heller's decision to award the plaintiff attorney's fees.

The defendant's financial affidavit reflected a net weekly income of $6143. Her weekly expenses were $5619.20 and her liabilities were $1,509,553, including an amount of $109,539 owed for her own counsel fees. Her assets were $484,132.74.

The court rendered judgment and issued its memorandum of decision, which it delivered orally from the bench, on the same date as the hearing.[6] The court, prior to issuing its decision, indicated that it had reviewed the transcript of the proceedings before Judge Heller, Judge Heller's decision, and the financial affidavits submitted by the parties dated January 12, 2015, which was the plaintiff's, and February 23, 2015, which was the defendant's. The court further indicated that it had exercised its discretion and inherent power to award an allowance of fees, and it considered the parties' respective financial abilities as well as the criteria set forth in General Statutes § 46b-82, as required by General Statutes § 46b-62. The court found that the income and earning disparity that Judge Heller had noted continued to exist between the parties. The court noted that the plaintiff was still unemployed and residing with his parents and had a net weekly income of $15.05. It also found that the defendant had a net monthly income of $26,618.86. The court then indicated that it found the plaintiff's testimony, regarding his expenses and available financial resources, not to be credible. It determined that

the plaintiff could earn a minimum of $90,000 per year in the field in which he was actively looking for work, and that, given his age, experience, and education level, he had an earning capacity of at least $200,000 per year.

On the basis of its foregoing findings, the court found that the plaintiff "has the resources or can garner the resources to defend the appeal and will not be deprived of his rights if the court declines to grant [his] motion." The court then denied the plaintiff's motion for attorney's fees to defend the appeal. This appeal followed.

After appealing, the plaintiff filed a motion for articulation, which the trial court denied. Then he filed a motion for review with this court, which motion was granted, but the relief requested was denied. In the same order, however, this court ordered the trial court, sua sponte, to "articulate the basis for [its] finding that the plaintiff has an earning capacity of $200,000 annually."

In response to this court's order, the trial court articulated the basis for its finding that the plaintiff's annual earning capacity is $200,000. In its articulation, the court provided the following additional bases for its decision not to award the plaintiff attorney's fees to defend the appeal. The court found that the plaintiff's testimony regarding his current earnings, monetary and other contributions from his mother, current rent, payments to his attorney, unemployment compensation, and American Express credit card was neither forthcoming nor honest; the information on the plaintiff's sworn financial affidavit regarding his current earnings and expenses was not truthful; and his claimed expenses and financial resources were not credible. The court noted that prior to residing with his mother, the plaintiff had rented a New York City apartment for $2500 per month and had earned an annual salary of $90,000 at his prior job as recently as September, 2014,[7] doing sales and marketing for major league baseball. The court further found that the plaintiff has a bachelor's degree in finance and a master's degree in business administration. It noted that his testimony as to his salary requirements, compensation discussions, or offers from the companies where he had sought employment was dishonest and that he concealed the amount of potential compensation for such jobs, which constituted a violation of his duty to provide a full and frank disclosure to the court. The court also articulated that the plaintiff has income from past television and film work and continues to be able to do such work. The court found that the plaintiff is in his forties and appears to be in excellent health, and that given the plaintiff's age, level and amount of work experience, job history, educational attainment, and the depth, breadth, and intensity of his job search and networking efforts, he has an annual earning capacity of $200,000.

Additional facts will be set forth as necessary.

We address only the plaintiff's second claim because we conclude that our determination of it is dispositive of this appeal. See, e.g., *Valentine* v. *Valentine*, 149 Conn. App. 799, 800, 90 A.3d 300 (2014).

The plaintiff claims that the court abused its discretion in denying his motion for appellate attorney's fees. The defendant argues that there was no abuse of discretion because the plaintiff failed to provide credible evidence to convince the court by a fair preponderance of the evidence that he was unable to pay appellate attorney's fees. We agree with the defendant.

We begin with our standard of review, which we set forth in the opinion we released today in the related appeal of *Pena* v. *Gladstone*, supra, 168 Conn. App. 141. "In dissolution proceedings, the court may order either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in General Statutes § 46b-82;[8] see also General Statutes § 46b-62.[9] This includes postdissolution proceedings affecting the custody of minor children. See *Krasnow* v. *Krasnow*, 140 Conn. 254, 262, 99 A.2d 104 (1953) (jurisdiction of court to modify decree in matter of custody is continuing one, so court has power, whether inherent or statutory, to make allowance for counsel fees when custody matter again in issue after final decree). Whether to allow counsel fees, and if so, in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did. . . . *Unkelbach* v. *McNary*, 244 Conn. 350, 373–74, 710 A.2d 717 (1998). The court's function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, [this court] allow[s] every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 543, 752 A.2d 978 (1998). We also note that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony. . . . *Malave* v. *Ortiz*, 114 Conn. App. 414, 425, 970 A.2d 743 (2009). An appeal is not a retrial and it is well established that this court does not make findings of fact. *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 865–66 n.3, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016)." (Footnotes in original;

internal quotation marks omitted.) *Pena* v. *Gladstone*, supra, 148–50. "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 299 Conn. 308, 329, 9 A.3d 708 (2010).[10]

The plaintiff argues that the court was mandated to award him fees since there was nothing in the record to support the conclusion that he had ample liquid assets to pay them. That a court must award fees if it determines that the moving party lacks ample liquid assets is an erroneous statement of the law. The test for an award of attorney's fees pursuant to § 46b-62 is not based only on a consideration of whether the moving party has ample liquid assets. If the moving party, the prospective recipient of the fee award, does not possess such assets, then § 46b-62 requires that the trial court look to and examine the total financial resources of the respective parties and the other criteria set forth in § 46b-82 to determine whether it would be equitable to award the movant attorney's fees under the circumstances. The language of § 46b-62 "*permits, without requiring*, a trial court to award attorney's fees after considering the respective financial abilities of the parties and the criteria set forth in section 46b-82." (Emphasis added; internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, 190 Conn. 26, 33, 459 A.2d 498 (1983); accord *Marcus* v. *Cassara*, 142 Conn. App. 352, 359, 66 A.3d 894 (2013).

Although the court found that the plaintiff was currently unemployed and being supported in part by his parents, the court also found that the plaintiff's testimony as to his expenses and financial resources was not credible. The plaintiff had the burden to prove what he alleged in his motion: that he was unemployed and not earning income, that he had substantial visitation expenses that he was unable to pay, and that he did not have any assets or other financial resources to enable him to pay attorney's fees.

We presume the court correctly analyzed the law and the facts in rendering its judgment. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 129–31, 981 A.2d 1068 (2009). Contrary to the plaintiff's contention, the court did not determine that the plaintiff had ample liquid assets with which to pay his fees, but rather, in accordance with § 46b-62, it considered the respective financial resources and abilities of the parties in accordance with the criteria contained in § 46b-82.

The plaintiff argues that the court's finding that his earning capacity was $200,000 was the sole basis for the denial of an attorney's fee award, but the court's

decision and its articulation list numerous other reasons for its denial of the plaintiff's motion, including his health; his vocational abilities; his level of education; the intensity of his job search efforts; his lack of credibility, including testimony the court deemed evasive as to his job-related inquiries; the level of financial contributions he was getting from his mother; his unemployment compensation; his credit card payments; and his past payments to his attorney. Furthermore, the court does not have to specify each and every criterion it considers in assessing the parties' total financial resources under § 46b-82. In making an award of attorney's fees pursuant to these sections, "[t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 397, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

The trial court's oral decision expressly references that it considered the statutory criteria set forth in § 46b-82, as required by § 46b-62. That general reference by the court to those criteria is all that is required. See *Jewett* v. *Jewett*, 265 Conn. 669, 693, 830 A.2d 193 (2003) (court is not obligated to make express findings on each of statutory criteria in making award of attorney's fees under § 46b-62). The court, although it must consider all of these criteria, "need not . . . make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. A ritualistic rendition of each and every statutory element would serve no useful purpose. . . . [T]he trial court is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors." (Internal quotation marks omitted.) *Greco* v. *Greco*, 70 Conn. App. 735, 739–40, 799 A.2d 331 (2002). "The trial court is not required to give equal weight to each of the specified criteria it considers in determining its award, nor is any single criterion preferred over the others. . . . Where . . . it is apparent that the trial court considered all mandatory factors in fashioning its orders, we are not permitted to vary the weight that the trial court placed upon the statutory criteria in reaching its decision." (Internal quotation marks omitted.) *Langley* v. *Langley*, 137 Conn. App. 588, 596–97, 49 A.3d 272 (2012). Although "[t]he trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income"; (internal quotation marks omitted) id., 600; the court is not compelled to assign any particular weight to earning capacity vis-à-vis other criteria under § 46b-82. Although we agree with the plaintiff that there was no support in the record for the court's finding that the plaintiff realistically could be expected to earn $200,000 annually,[11] it was harmless error in light of the fact that it was not

the only factor that the court expressly considered or may have considered in determining that he had the resources, or could garner the resources, to pay $25,000 in appellate attorney's fees.

Among other factors reflected in the record that the court might reasonably have considered was the fact that although the plaintiff claimed that he owed his attorney $53,219, his attorney continued to represent him, and the defendant already had been ordered by Judge Heller to pay an unspecified $75,000 award of attorney's fees to the plaintiff, which the plaintiff's counsel suggested had a "90 percent" chance of being affirmed on appeal. The plaintiff's financial affidavit also revealed nearly $25,000 in two retirement savings accounts, which he testified he had not considered liquidating to pay his attorney's fees because "[t]hat's all my money." He did not testify that these accounts could not be liquidated or borrowed upon. The plaintiff also testified, and the court found, that he had past earnings of $90,000.[12] The court also might reasonably have assumed that the plaintiff—given the optimism he expressed concerning his job search, his flexibility as to salary requirements, and the strength of his efforts in seeking employment—would soon find gainful employment in either the sports marketing or the entertainment field. The court also heard considerable evidence that the plaintiff was contributing nothing to the support of the child and that that burden had become the defendant's exclusively. The defendant also had been voluntarily paying 100 percent of the cost of the visitation evaluator, Visitation Solutions. The defendant's appellate attorney had requested a retainer of $10,000, not $25,000, to take her appeal. The court also might have considered the considerable expenses and liabilities reflected in the defendant's financial affidavit.[13]

The plaintiff further argues that even if the court concluded that he had sufficient financial assets to pay appellate attorney's fees, the court could not properly have concluded that its failure to award him attorney's fees to defend the appeal would not undermine Judge Heller's prior financial order granting him $75,000 in fees. See *Maguire* v. *Maguire*, 222 Conn. 32, 44, 608 A.2d 79 (1992) (to award counsel fees to spouse who had sufficient assets would be justified if failure to do so would substantially undermine other financial awards). He notes that but for the appellate stay, the only resource that could be applied to pay for the expense of defending the appeal would be to take some portion of the court's prior $75,000 award, and that shifting a portion of the court's prior award to defend the appeal would impair and diminish the plaintiff's ability to prosecute his motion for modification.[14]

This argument is similar to one that was raised in *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 857,

where the trial court awarded attorney's fees to a mother defending a motion for modification of custody, and later, a different judge denied her subsequent motion for attorney's fees when she had exhausted her initial award. The mother appealed, arguing that she lacked ample liquid funds, and that the court had improperly considered the father's substantial child support burden in deciding not to award her additional fees. This court upheld the denial of attorney's fees, concluding that there was no reason why the court could not equitably consider factors other than those enumerated in § 46b-82 if such factors are appropriate for a just and equitable resolution of the dispute. Id., 876. In *Clougherty*, this court further emphasized that the court was not obligated to make any finding as to whether the failure to award additional fees would undermine the court's existing financial orders. "Furthermore, the court was not obligated to award the plaintiff additional attorney's fees merely because she exhausted [the court's] initial award . . . to defend the defendant's motion to modify custody." Id., 878. We iterate that the language of § 46b-62 permits, but does not require, the awarding of attorney's fees. See *Marcus* v. *Cassara*, supra, 142 Conn. App. 358–59.[15]

Given the notable differences in the parties' presentations during the two hearings, Judge Tindill, upon finding the plaintiff not to be credible, reasonably could have concluded, seven months after the hearing before Judge Heller and after almost a year of unemployment, that the plaintiff's claims of impecuniosity appeared less genuine and more contrived. It is clear from the record that the court thought the plaintiff was less than forthcoming about his financial resources. The manner in which he testified, particularly on cross-examination, reasonably could have left the court with the impression that he was concealing or conveniently forgetting financial information. Ultimately, therefore, in light of the court's conclusion that the plaintiff did not provide the court with full and frank disclosure as to his financial situation, he did not meet his burden of proving that it was fair and equitable, in light of all the circumstances, to order the defendant to pay him additional attorney's fees pursuant to § 46b-62 to defend the defendant's appeal.

On the basis of our review of the full record, we conclude that the court did not abuse its discretion in denying the plaintiff appellate attorney's fees. The court specifically stated that it considered all of the statutory criteria set forth in the applicable statute, as well as the parties' testimony and financial affidavits. Affording the court every reasonable presumption in favor of the correctness of its decision, we assume that the court relied on evidence relevant to each statutory criterion as it applied to both parties, and not solely on its finding as to the plaintiff's earning capacity. In light of the credible evidence and the court's findings, we conclude

that the court properly exercised its wide discretion in denying the plaintiff's motion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This court denied the parties' motions to consolidate the two appeals. The related appeal, *Pena* v. *Gladstone*, 168 Conn. App. 141,     A.3d     (2016), involves the defendant's appeal from the court's granting of the plaintiff's motion for attorney's fees to prosecute his motion for modification of custody.

[2] *Pena* v. *Gladstone*, supra, 168 Conn. App. 141.

[3] In our opinion released today regarding the related appeal, we reversed, in part, the judgment of the trial court with respect to the portion of the $75,000 award that pertained to proceedings that are unrelated to the plaintiff's motion for modification of custody. *Pena* v. *Gladstone*, supra, 168 Conn. App. 175.

[4] The plaintiff was reluctant to provide the names of the companies where he had sought employment or had been interviewed, alleging that, in the past, the defendant and her father had contacted his potential employers to discourage his hiring. The plaintiff only disclosed the names after the court ordered the defendant and her family members not to contact any of the potential employers that the plaintiff had mentioned during the hearing.

[5] On appeal, the plaintiff extensively compares the financial affidavit that the defendant filed at the time of the hearing before Judge Heller, on July 28, 2014, with the financial affidavit that she filed at the time of the hearing before Judge Tindill on February 23, 2015. In this regard, the plaintiff claims that the defendant attempted to render herself "judgment proof" subsequent to Judge Heller's attorney's fee award. These differences, however, were neither explored during the defendant's testimony nor argued to Judge Tindill on February 23, 2015, and there is no indication that the court considered the alleged disparities or took judicial notice of the defendant's earlier financial affidavit. See *Torres* v. *Waterbury*, 249 Conn. 110, 133, 733 A.2d 817 (1999) ("[i]t is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level" [internal quotation marks omitted]).

[6] This court ordered the trial court to comply with Practice Book § 64-1 by signing the February 23, 2015 transcript of its oral decision.

[7] The reference to September, 2014, appears to be a scrivener's error as the court acknowledged, during the hearing on February 23, 2014, that the plaintiff had last worked in May, 2014. September, 2014, is one time period during which the plaintiff testified that he had started receiving unemployment compensation.

[8] "General Statutes § 46b-82 (a) provides in relevant part: 'In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the . . . age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.' " *Pena* v. *Gladstone*, supra, 168 Conn. App. 148 n.7.

[9] "General Statutes § 46b-62 provides in relevant part: '(a) In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceedings concerns the custody, care, education visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82.' " *Pena* v. *Gladstone*, supra, 168 Conn. App. 148 n.8.

[10] We note that the trial court is not limited to awarding attorney's fees for proceedings at the trial level. Connecticut courts have permitted postjudgment awards of attorney's fees to defend an appeal. See *Friedlander* v. *Friedlander*, 191 Conn. 81, 87–88, 463 A.2d 587 (1983) (affirming award of attorney's fees to defend appeal); *Greene* v. *Greene*, 13 Conn. App. 512, 517, 537 A.2d 537 (same), cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988).

[11] See *Schmidt* v. *Schmidt*, 180 Conn. 184, 190–91, 429 A.2d 470 (1980); *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 170, 755 A.2d 946 (2000).

[12] If the court had determined the plaintiff had an earning capacity of $90,000 annually, it would not necessarily have changed the end result on the plaintiff's motion. Evidence of past earnings may establish an earning

capacity. *Schmidt* v. *Schmidt*, 180 Conn. 184, 191, 429 A.2d 470 (1980).

[13] "It is also well established that the court has inherent equitable powers in resolving actions stemming from a marital dispute, and the court may consider factors other than those enumerated in the statutes if such factors are appropriate for a just and equitable resolution of the marital dispute . . . ." (Internal quotation marks omitted.) *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 876; id., 877 (in addition to considering parties' overall financial situations in accordance with § 46b-82 criteria, as required by § 46b-62, court could consider one party's additional expenses incurred in fulfilling parental duties under child support and visitation orders); see also *Benavides* v. *Benavides*, 11 Conn. App. 150, 156, 526 A.2d 536 (1987).

[14] As the plaintiff notes in his brief, "[t]he court, [*Heller, J.*] giveth and the court, [*Tindill, J.*] taketh away."

[15] There are obvious inconsistencies in the two judgments with respect to an award of attorney's fees that we have considered on appeal and decided today. These inconsistencies are the result of factual, and significantly, credibility determinations of separate fact finders as to different, albeit similar, motions in which financial abilities were considered seven months apart and determined in light of separate and distinctive factual presentations by the parties. As a result, we cannot say that the apparent inconsistencies in the two decisions render either outcome illogical or unreasonable. In *McCarthy* v. *McCarthy*, 55 Conn. App. 326, 752 A.2d 1093 (1999), cert. denied, 252 Conn. 923, 752 A.2d 1081 (2000), the plaintiff's first motion for appellate attorney's fees was denied. Id., 328. Later, her second motion for appellate attorney's fees was granted by a different judge, who had not been informed of the prior judge's earlier denial. When informed of the earlier denial in a motion for rehearing, the second judge vacated his decision granting counsel fees, ruling that the first judge's decision should be adhered to as the law of the case. Id., 329–31. This court disagreed and held that the doctrine of the law of the case did not apply because the issue of appellate counsel fees was not an issue requiring a legal ruling, but rather a motion for the exercise of the trial court's discretion, which confers a wide degree of freedom when the same question is presented to different judges of a single district court, particularly when new or overriding circumstances exist. Id., 333–34; see also *State* v. *Knight*, 266 Conn. 658, 673, 835 A.2d 47 (2003) (logically inconsistent verdicts by separate fact finders are permissible); *State* v. *Arroyo*, 292 Conn. 558, 579–80, 973 A.2d 1254 (2009) (same), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010).