******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NELSON PENA *v.* LAURA GLADSTONE
(AC 37479)

Keller, Mullins and Lavery, Js.

*Argued May 18—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Stanley Novack, judge trial referee, [dissolution judgment]; Heller, J. [motion for counsel fees, articulation].)

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (defendant).

*John H. Van Lenten*, for the appellee (plaintiff).

*Opinion*

KELLER, J. This appeal, and a related appeal, *Pena* v. *Gladstone*, 168 Conn. App. 175, A.3d (2016), which we also officially release today, involve successive motions for attorney's fees considered by two different judges pertaining to the same postdissolution custody proceeding in a contentious family case. The defendant in this appeal, Laura Gladstone, appeals from a $75,000 postjudgment award of attorney's fees to the plaintiff, Nelson Pena, by the trial court, *Heller, J.*, for past and future legal services rendered in connection with custody and visitation issues involving the parties' minor child.[1] The defendant claims that the court (1) improperly applied the law and (2) abused its discretion when it ordered the defendant to pay the plaintiff's counsel fees. We agree with the defendant that the court's award of legal fees to the plaintiff improperly included fees for past legal services rendered that did not relate to the prosecution of the plaintiff's pending motion for modification of custody and, therefore, we reverse, in part, the judgment of the court.

The following facts and procedural history are relevant to this appeal. The parties were divorced on August 17, 2010. The defendant was awarded sole legal and physical custody of the parties' minor child in accordance with Article II of a separation agreement executed by the parties. That lengthy and complex section of the agreement, regarding custody and visitation, as well as other parenting considerations, provided the plaintiff with liberal parenting time with the child. Litigation between the parties continued, however, after the entry of the dissolution judgment, and each party filed numerous motions relative to parenting issues. The situation deteriorated to the point where on July 28, 2014, the parties agreed to engage the services of Visitation Solutions to evaluate and facilitate the minor child's visitation with the plaintiff. A $3500 retainer was required for the use of this service; the plaintiff was ordered to pay 18 percent of the costs, and the defendant was to be responsible for the remaining 82 percent of the costs. On May 6, 2014, the plaintiff, alleging the defendant's consistent interference with his relationship with the minor child, filed a motion for modification of legal custody, seeking joint legal custody, along with a motion for attorney's fees that sought "attorney's fees in an amount sufficient to prosecute the underlying motion for modification" and a further order that the defendant pay the cost of the child's guardian ad litem.[2] He further alleged that he previously had "earnings of less than $150,000 per year" and was unemployed as of May 2, 2014.

The court heard the plaintiff's motion for attorney's fees on July 28, 2014, and issued its memorandum of decision on November 19, 2014. The court noted that the "parties were before the court on the plaintiff's

motion for attorney's fees . . . in which the plaintiff seeks an award of attorney's fees for counsel to represent him in the parties' continuing dispute over custody and visitation, particularly in prosecuting the plaintiff's motion for modification for joint legal custody."

The court then found the following facts. "The plaintiff testified that he had been unemployed since May, 2014. He was residing with his parents at the time of the hearing. According to his financial affidavit, the plaintiff has net weekly income of $15, representing residuals for his prior work in television and film. The plaintiff's financial affidavit reflects a total of $2785 in his checking and savings accounts and liabilities totaling $58,139.

"According to the affidavit of counsel fees submitted by the plaintiff's counsel, the plaintiff had paid $22,339 and owed $41,261 as of the hearing date. The plaintiff testified that he had not asked his parents for financial assistance to pay his legal bills. There was no evidence that the plaintiff's parents were willing or able to do so.[3]

"The defendant is a managing director of Gladstone Management Corporation, a family company.[4] According to her financial affidavit, her net weekly income from employment is $5569. She had $7742 in her checking account and retirement assets totaling $429,075 as of the hearing date. The defendant reported liabilities of $288,354 on her financial affidavit, $266,450 of which was a loan from the defendant's father for her legal fees in this action. The balance due to the defendant's father had increased by approximately $166,000 since January, 2014. . . .

"There is a significant disparity between the financial resources of the plaintiff and those available to the defendant.[5] In addition to her own earnings and assets, the defendant has a loan facility with her father to fund her legal fees as necessary. The plaintiff does not have a similar line of credit arrangement with his family.

"If the plaintiff cannot afford an attorney to represent him in postjudgment custody and visitation matters, he may be unable to protect his interests and the best interests of the parties' child. . . . Where, as here, a minor child is involved, an award of counsel fees may be even more essential to insure that all of the issues are fully and fairly presented to the court. . . .

"The court finds that the attorney's fees and costs sought by the plaintiff are reasonable under the circumstances.[6] An award that includes a retainer for future professional services is also appropriate here in view of the issues relating to the parties' child that are pending before the court." (Citations omitted; footnotes altered.)

The court granted the plaintiff's motion and ordered that the defendant pay $75,000 toward the plaintiff's attorney's fees, which payment "includes a retainer for

services to be rendered in the future, to counsel for the plaintiff on or before December 15, 2014." This appeal followed.

The defendant filed a motion for articulation with this court on June 30, 2015. The trial court filed its articulation on September 25, 2015. The defendant requested that the court articulate (a) the legal and factual basis for the trial court's finding that the defendant had a "loan facility with her father to fund her legal fees as necessary"; (b) whether the trial court determined that the defendant has a line of credit arrangement with her father to fund her own future legal expenses, and, if so, the legal and factual basis for that determination; (c) whether the trial court determined that the defendant would use a "loan facility with her father" to pay all or any part of the court's $75,000 counsel fee award; and (d) the factual basis for the trial court's determination that the plaintiff does not have a line of credit arrangement with his family. The court articulated: "[T]he court's finding that the defendant had a 'loan facility with her father to fund her legal fees as necessary' was based on the defendant's testimony at the hearing . . . . The court made no findings as to whether the defendant has a line of credit arrangement with her father to fund her own future legal expenses. The court made no findings as to whether the defendant would use a 'loan facility with her father' to pay all or any part of the $75,000 counsel fee award to the plaintiff. The court's finding that the plaintiff does not have a line of credit arrangement with his family was based on the plaintiff's testimony at the . . . hearing."

The defendant also requested that the court articulate the legal and factual basis for (a) the portion of the $75,000 attorney's fee award that was for services already rendered by the plaintiff's counsel, and (b) the portion of the $75,000 award that was for services to be rendered in the future. The court articulated that it "did not allocate the award of attorney's fees between payment for services that had already been provided by the plaintiff's counsel and a retainer for future services. Counsel for the plaintiff provided an affidavit of attorney's fees and represented to the court at the . . . hearing that his firm was owed $41,261.12. He also requested a retainer of $50,000." No motion for review of the articulation was filed.

The court granted the plaintiff's motion for a termination of the stay of its $75,000 counsel fee award on September 22, 2015. The defendant filed a motion for review of that order. On November 18, 2015, this court granted that motion and granted the relief requested by vacating the trial court's order terminating the stay.

Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the court

improperly applied the law when it ordered the defendant to pay the plaintiff's attorney's fees.

We begin by noting our standard of review, which is well established. In dissolution proceedings, the court may order either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in General Statutes § 46b-82;[7] see also General Statutes § 46b-62.[8] This includes postdissolution proceedings affecting the custody of minor children. See *Krasnow* v. *Krasnow*, 140 Conn. 254, 262, 99 A.2d 104 (1953) (jurisdiction of court to modify decree in matter of custody is continuing one, so court has power, whether inherent or statutory, to make allowance for counsel fees when custody matter again in issue after final decree).[9] "Whether to allow counsel fees, and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 373–74, 710 A.2d 717 (1998). The court's "function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, [this court] allow[s] every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998). We also note that "the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Citation omitted; internal quotation marks omitted.) *Malave* v. *Ortiz*, 114 Conn. App. 414, 425, 970 A.2d 743 (2009). "An appeal is not a retrial and it is well established that this court does not make findings of fact." *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 865–66 n.3, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016).

The defendant contends that the trial court could not order her to pay the plaintiff's attorney's fees unless the evidence showed that she had ample liquid assets with which to pay the award, and that the plaintiff's only liquid asset at the time of the hearing on the plaintiff's motion was a bank account with a balance of $7742. She argues that had the court done a proper analysis of whether an award of counsel fees was appropriate, it would have concluded that neither party had ample

liquid assets to support an award of attorney's fees. Instead, she claims, the court looked past her limited liquid funds and considered the parties' total financial resources and, in doing so, took an unbalanced view of them. She further claims that the court improperly accepted as true the plaintiff's allegations that she had violated their parenting agreement and considered the defendant's past ability to borrow funds from her father to pay her past legal fees. The defendant also asserts that if neither party has ample liquid funds to pay attorney's fees, there has to be a required finding of contempt, misconduct, or bad faith litigation in order to justify an award.

The plaintiff asserts that the court, after first determining that the plaintiff, the party seeking counsel fees, did not have ample liquid assets with which to pay attorney's fees, properly applied the law and considered the parties' overall financial abilities and considered the required statutory criteria in determining whether to award attorney's fees. He claims that the defendant is faulting the trial court for not specifying how it considered and weighed each statutory criterion despite the fact that the trial court is not obligated to make express findings on each of the criteria. Finally, the plaintiff argues that the court emphasized that in issues involving a minor child's custody, an award of counsel fees may be even more essential to protect the child's best interests. We agree with the plaintiff that the court's determination that the defendant should pay an award of counsel fees to the plaintiff was not in derogation of the law. We disagree with the plaintiff, however, as to the reasonableness of the fees that were awarded to the plaintiff, which will be discussed in part II of this opinion.

General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings except in certain contempt matters.[10] Section 46b-62 provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorneys' fees of the other in accordance with their respective financial abilities and the criteria set forth in § 46b-82." These criteria include, inter alia, the parties' "age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs . . . ." General Statutes § 46b-82 (a). "[T]he focus of § 46b-62 is on compensation. Section 46b-62 empowers a trial court to award attorney's fees to make a financially disadvantaged party whole for pursuing a legitimate legal claim. The court may not exercise this compensatory power without first ascertaining that the prospective recipient lacks funds sufficient to cover the cost of his or her legal expenses." *Dobozy* v. *Dobozy*, 241 Conn. 490, 499, 697 A.2d 1117 (1997). "It is the circumstances of the parties at the time of trial which control." *Arrigoni* v. *Arrigoni*, 184 Conn. 513, 519, 440 A.2d 206 (1981).

In making an award of attorney's fees pursuant to these statutes, "[t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 397, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

In *Koizim* v. *Koizim*, 181 Conn. 492, 435 A.2d 1030 (1980), our Supreme Court stated: "Counsel fees are not to be awarded merely because the obligor has demonstrated an ability to pay. Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . In making its determination regarding attorney's fees, the court is directed by . . . § 46b-62 to consider the respective financial abilities of the parties. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. Because the defendant had ample liquid funds as a result of the other orders in this case, there was no justification for an allowance of counsel fees." (Citations omitted; internal quotation marks omitted.) Id., 500–501.

Subsequently, in *Maguire* v. *Maguire*, 222 Conn. 32, 608 A.2d 79 (1992), our Supreme Court noted that "the matters to be considered in awarding a party counsel fees are essentially the same as those involved in making alimony awards . . . . [R]easonable attorney's fees [may] be awarded in accordance with [the parties'] respective financial abilities and the criteria set forth in [§ 46b-82, which lists numerous] criteria to be considered by the court in awarding alimony." (Citations omitted; internal quotation marks omitted.) Id., 43–44. In analyzing the statutory language and the relevant case law interpreting § 46b-62, the court stated, "ample liquid funds were not an absolute litmus test for an award of counsel fees. . . . [T]o award counsel fees to a spouse who had sufficient liquid assets would be justified, if the failure to do so would substantially undermine the other financial awards." (Citation omitted; internal quotation marks omitted.) Id., 44.

"It is also well established that the court has inherent equitable powers in resolving actions stemming from a marital dispute, and the court may consider factors other than those enumerated in the statutes if such factors are appropriate for a just and equitable resolution of the marital dispute . . . ." (Internal quotation marks omitted.) *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 876; id., 877 (in addition to considering parties' overall financial situations in accordance with § 46b-82 criteria, as required by § 46b-62, court could consider one party's additional expenses incurred in fulfilling parental duties under child support and visitation orders); see also *Benavides* v. *Benavides*, 11 Conn. App. 150, 156, 526 A.2d 536 (1987).[11]

In the present case, the court heard brief testimony from both parties and also had for its review the parties' financial affidavits, the defendant's 2013 tax return and her Form W-2 for 2012. The defendant's wages and other compensation exceeded one million dollars per year. Her assets, including a one-half interest in a home in Greenwich valued at $722,129,[12] restricted stock valued at $73,713, upon which the defendant had been able to borrow, and retirement assets valued at $429,075. The plaintiff was unemployed and had a weekly net income of $15. He was living with his parents and the net value of his assets was $29,983.89. Although the defendant testified, she never asserted during the hearing that she could not generate additional funds by liquidating or borrowing on her considerable assets. The court found that she had incurred attorney's fees in the amount of $166,000 between January and July, 2014.

In granting the plaintiff an award of counsel fees in this case, the court noted that if the potential obligee has ample liquid funds, an allowance of counsel fees would not be justified. Therefore, the court obviously concluded, after noting that the plaintiff was unemployed with a net weekly income of $15 and liabilities totaling $58,139 and that he was residing with his parents, that he did not possess ample liquid funds. As a result, the court expressly indicated, without specificity, that it had considered the total financial resources of the parties, employing the criteria set forth in § 46b-82 as required by § 46b-62, the statute that permits the court to award attorney's fees in dissolution proceedings.

The defendant devotes a considerable portion of her brief to arguing that the court specifically neglected to consider certain criteria or that it impermissibly considered others.

The defendant asserts that the court abused its discretion by failing to consider the plaintiff's employability or earning capacity, but the court heard the plaintiff testify that he was currently unemployed and what amounts he had earned at several of his prior places of employment. The defendant's counsel made no further inquiry in this area. The defendant also claims that the court failed to consider her expenses as the custodial parent, which were reflected on her financial affidavit. In marshaling the evidence during a brief closing argument, however, the defendant's counsel did not present any argument to the court regarding the plaintiff's employability or earning capacity, or the defendant's custodial expenses, or how they should be taken into consideration when ruling on the plaintiff's motion.

The defendant also claims that the court failed to consider the fact that her earning level is commensurate with her expense level,[13] and, therefore, she cannot possibly comply with an order to pay the plaintiff's

counsel fees.

Despite the defendant's assertions that the court did not consider the plaintiff's employability, or the defendant's custodial and other expenses, nothing in the court's memorandum of decision supports that conclusion. Rather, the trial court concluded, after reviewing and considering the evidence of the parties' financial circumstances, that there was "a significant disparity between the financial resources of the plaintiff and those available to the defendant." The court, given the circumstances of this case, reasonably deemed giving considerable weight to the plaintiff's earning capacity to be inappropriate. The visitation situation in this case had progressed to a point where, for whatever reason, the minor child, who was seven years old at the time of the hearing, was not seeing the plaintiff as often as was contemplated by the separation agreement, visits were supervised, and a visitation evaluation had become necessary. Thus, it was not unreasonable for the court to conclude that time was of the essence and that waiting for the plaintiff to find employment commensurate with his earning capacity would not be in the minor child's best interests.

Taking further aim at the court's consideration of the best interests of the minor child, the defendant argues that it was improper for the trial court to consider the basis underlying the plaintiff's motion for modification in ruling on his motion for counsel fees. The defendant suggests that the court accepted as true the plaintiff's allegations of parental alienation on her part and, therefore, issued a punitive award. We do not agree. Although the court indicated as part of its consideration that "[i]f the plaintiff cannot afford an attorney to represent him in postjudgment custody and visitation matters, he may be unable to protect his interests and the best interests of the parties' child," and that "where, as here, a minor child is involved, an award of counsel fees may be even more essential to insure that all of the issues are fully and fairly presented to the court," the court did not specifically find that there was truth to the plaintiff's allegations of parental alienation on the part of the defendant.[14] Our Supreme Court has indicated that a paramount consideration in the determination of whether to award a party counsel fees is that the party "may not be deprived of [his or] her rights because of lack of funds." (Internal quotation marks omitted.) *Koizim* v. *Koizim*, supra, 181 Conn. 501. As previously noted in this opinion, a trial court, in reviewing an award of attorney's fees, "has inherent equitable powers in resolving actions stemming from marital disputes that allow it to consider factors beyond those enumerated in the statutes." *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 877. Thus, once it determined that the statutory factors justifying an award had been met, it was not an abuse of discretion for the court to additionally consider the exigencies of the circumstances with

regard to visitation and custody, and to determine that waiting for the plaintiff to realize, at some future point, sufficient liquid assets with which to pay counsel fees was not in the minor child's best interests.

The defendant also argues that the court improperly considered her nonliquid assets in awarding the plaintiff counsel fees. She claims the court should have considered only the $7742 in her checking account in determining her ability to pay an award of attorney's fees. In the alternative, the defendant claims that even if the trial court was correct in examining her "total financial resources," it should have denied the plaintiff's motion because she does not possess adequate financial resources to pay the plaintiff's counsel fees.

Contrary to the argument set forth by the defendant, case law does not require the trial court to first determine whether the party *opposing* the request for an award of counsel fees has ample liquid assets sufficient to pay such an award. Hence, the defendant's view of the trial court's discretionary authority to award attorney's fees is too restrictive and would render the reference to § 46b-82 in § 46b-62 a nullity. It also would permit a recalcitrant party to insulate other sources of income from the court's consideration in weighing the criteria set forth in § 46b-82 merely by avoiding the accumulation of immediately accessible sums of money.

In *Dobozy* v. *Dobozy*, supra, 241 Conn. 490, our Supreme Court determined that the compensatory power under § 46b-62 may not be exercised unless the trial court first determines that "the *prospective* recipient lacks funds sufficient to cover the cost of his or her legal expenses." (Emphasis added.) Id., 499. Although the court in *Bornemann* v. *Bornemann*, supra, 245 Conn. 508, noted that the plaintiff who was awarded counsel fees lacked sufficient liquid assets with which to pay her own attorney's fees, it also indicated that assets that would have been easily convertible to liquid form may be considered when reviewing each party's total financial resources; however, in that case, the only asset that the plaintiff possessed was shares of stock which, if sold, would not have generated an amount sufficient to pay her counsel fees. Id., 544–45. In *Arrigoni* v. *Arrigoni*, supra, 184 Conn. 519, the court stated that it did not mean to imply in *Koizim* v. *Koizim*, supra, 181 Conn. 501, that no allowance should be made if a party has sufficient cash to meet the attorney's bill, and in *Arrigoni*, it upheld a $5000 award of fees when the trial court did not regard the defendant's other financial resources as adequate for her future needs, even when supplemented by the financial orders contained in the judgment and the receipt of a $97,000 personal injury award, particularly because of her permanent disability and the continuing cost of her medical care. *Arrigoni* v. *Arrigoni*, supra, 517–20.

The use of the term "ample liquid funds" first appears

in *Koizim*, with reference to counsel fees pursuant to § 46b-62 being improperly awarded because the proposed recipient of the award possessed ample liquid assets. *Koizim* v. *Koizim*, supra, 181 Conn. 501. Contrary to the defendant's position, the consideration of ample liquid assets pertains to the party requesting fees, and not to the party opposing the award. The plaintiff correctly argues that the test for an award of attorney's fees pursuant to § 46b-62 is not whether the nonmoving party has adequate liquid assets, but whether the *moving* party has ample liquid assets to pay his or her own attorney's fees. See *Dobozy* v. *Dobozy*, supra, 241 Conn. 499. If the moving party, the prospective recipient of the fee award, does not possess such assets, then the trial court must look to and examine the total financial resources of the respective parties and the criteria set forth in § 46b-82 to determine whether it would be equitable to award the movant attorney's fees under the circumstances.

The so-called "*Maguire* rule"; *Maguire* v. *Maguire*, supra, 222 Conn. 44; was not expressed as such until our Supreme Court decided *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007). In interpreting *Maguire*, the court in *Ramin* indicated that "the general rule under *Maguire* is that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." Id., 352.

This court, in *Wood* v. *Wood*, 160 Conn. App. 708, 125 A.3d 1040 (2015), recently addressed a claim similar to the defendant's claim that her lack of liquid assets prohibited an award of attorney's fees. In *Wood*, the plaintiff argued that his assets essentially were immune from the trial court's consideration because there was no finding that he could access the equity in his assets by selling, mortgaging, or collecting on them. Id., 725–26. We rejected the plaintiff's arguments that his assets were somehow immune from the court's consideration in determining whether he was capable of paying, inter alia, the defendant's counsel fees. This court concluded that, as long as the plaintiff had adequate financial assets to comply, the trial court did not abuse its discretion in ordering him to make certain payments to the defendant, including the payment of attorney's fees.[15] Id., 726. This court further noted that "[t]he trial court is not required to establish a plan for [a party] that details the steps [he or she] must take in order to comply with the court's financial orders." Id.

In the present case, like the plaintiff in *Wood*, the defendant possessed adequate financial resources, including a substantial income and assets valued at more than $1,230,000, from which the court reasonably could conclude she had the financial ability to comply

with the court's order and sustain her basic welfare. The court did not abuse its discretion as it could have determined the defendant had sufficient assets to comply with its award, which assets were not shown to be incapable of liquidation.

The defendant portrays this case as one of first impression because she claims that where neither party has adequate financial resources and there has been no finding of contempt, misconduct or bad faith litigation, attorney's fees may not be awarded. Because we have concluded that the court, after considering the § 46b-82 criteria, reasonably could have found that the defendant *had* sufficient financial resources to pay the award, this argument requires scant attention. The plaintiff, in countering the defendant's argument, cites our Supreme Court's decision in *Mays* v. *Mays*, 193 Conn. 261, 476 A.2d 562 (1984), which presented a situation where both parties had little income or assets and the defendant challenged the trial court's order that he pay $1000 toward the plaintiff's counsel fees in defending an appeal. Id., 268. In concluding that the trial court abused its discretion in awarding counsel fees to the plaintiff, the court stated, "[t]here is nothing in the record to indicate that [the defendant] had any resources which could be applied to the payment of [the plaintiff's] expenses in defending the appeal." Id., 270. Contrary to the defendant's position in the present case, the court looked to the total financial resources of each party, and not merely to their liquid assets, in determining whether it would be equitable to award the movant attorney's fees under the circumstances. Unlike the defendant in *Mays*, whose income was $59.75 per week and whose assets consisted of a ten year old car, furniture, and $500 worth of camera equipment; id., 269; the defendant in the present case possessed more than adequate financial resources to pay the award.

Furthermore, her view ignores the broad equitable powers of family courts. "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court in actions for divorce or dissolution of marriage." (Citations omitted.) *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 585–86, 362 A.2d 835 (1975).[16]

The final aspect of the defendant's claim is that the court abused its discretion by considering the defendant's past ability to borrow considerable sums from her father to pay her own legal fees. On her financial affidavit, the defendant represented that she owed her

father $266,450 in loans for legal fees, which she was repaying at the rate of $2664.50 per month.[17] Specifically, she points to a portion of the court's memorandum of decision that notes "the defendant has a loan facility with her father to fund her legal fees as necessary." The defendant asserts that this runs afoul of our Supreme Court's holding in *Mallory* v. *Mallory*, 207 Conn. 48, 539 A.2d 995 (1988), where the court held that family assistance in paying the defendant's attorney's fees did not reasonably support a conclusion that the family also would help the defendant pay the plaintiff's attorney's fees for an appeal. Id., 56. This claim, however, is refuted by the trial court's subsequent articulation, in response to the defendant's request, regarding the defendant's borrowing sums from her father.[18] In its articulation, the court unambiguously stated: "The court made no finding as to whether the defendant has a line of credit arrangement with her father to fund her own future legal expenses. The court made no finding as to whether the defendant would use a 'loan facility with her father' to pay all or any part of the $75,000 counsel fee award to the plaintiff." The court thus impliedly rejected the defendant's claim that it considered the defendant's ability to borrow from her father as the sole or primary means available to her to pay either the plaintiff's or her own fees going forward.

On the basis of our review of the record and our interpretation of existing case law, we conclude that the court did not abuse its discretion in granting the plaintiff's motion for attorney's fees to prosecute his motion for a modification of the custody order. The court correctly considered and employed the *Maguire* test under §§ 46b-62 and 46b-82. Its decision was not phrased in such a manner that it suggested the court was sanctioning the defendant; rather, the court, after considering the correct criteria, also employed its inherent equitable powers in resolving actions stemming from marital disputes and properly considered another factor beyond those enumerated in the statutes. *Benavides* v. *Benavides*, supra, 11 Conn. App. 156. The court considered the "significant disparity between the financial resources of the plaintiff and those available to the defendant," and the need to fairly and fully resolve the parties' continuing, four year old dispute over custody and visitation of their seven year old child, as well as the need to ensure that the plaintiff not be deprived of his rights because of a lack of funds.

## II

We next address the defendant's claim that the amount of the attorney's fees awarded reflected an abuse of the court's discretion.

The defendant objects to the payment of fees that, she argues, were outside the scope of the motion, not supported by evidence and completely speculative. She argues that the court improperly awarded both counsel

fees for past legal work unrelated to the custody proceeding before it when the plaintiff's motion for counsel fees sought an award only "in connection with the prosecution of the plaintiff's motion for modification of joint legal custody" and not in connection with past litigation. In addition, the defendant claims that the court improperly failed to determine how much of the $75,000 was a retainer for future legal services and how much was for legal services already rendered.[19] Finally, the defendant objects to the court's decision to award fees in an indeterminate amount for future work of undetermined description when the plaintiff offered no testimony, expert or otherwise, to support the representation of counsel that he needed a $50,000 retainer for future work.

The plaintiff counters that the defendant failed to preserve this claim when she failed to object to the submission of the affidavit by the plaintiff's counsel regarding fees or challenge the reasonableness of his requested attorney's fees during the hearing, even after the court addressed the defendant's counsel and asked if she wanted to be heard further on the request. See *Dobozy* v. *Dobozy*, supra, 241 Conn. 501 (trial court must allow obligor spouse right to challenge reasonableness of fees by cross-examination of witnesses or by presentation of evidence). The plaintiff claims that by failing to object or inquire further, the defendant effectively acquiesced in his request. Additionally, the plaintiff claims that his motion for attorney's fees expressly stated that he had existing fees due to his attorney in excess of $30,000.

Although we agree that under the circumstances of this case, which plainly reflect a history of litigiousness between the parties, the court acted within its wide discretion in awarding a sizeable retainer,[20] we agree with the defendant that the court abused its discretion in setting the award of fees at $75,000 because the unspecified portion of the award that constituted payment of past fees for legal work unrelated to the plaintiff's pending custody issue was improper.

The following additional facts are relevant to the issue of the impropriety of the amount of fees awarded. During the hearing on the plaintiff's motion for attorney's fees, after the parties had testified, the plaintiff's counsel submitted a fee affidavit that contained entries spanning a period from March, 2012, to July 28, 2014. The fee affidavit indicated an amount billed over the past twenty-eight months of $63,600, and an amount due of $41,261.12 for past services rendered. The plaintiff's counsel represented that he sought an additional $50,000 retainer for possible future work on the plaintiff's motion for modification of custody. The defendant's counsel did not dispute the reasonableness, as to amount, of fees incurred for past work performed, but the defendant did object to the granting of *any*

award. Furthermore, the defendant's counsel did specifically dispute the assertion of the plaintiff's counsel that a retainer in the amount of $50,000 was necessary for future work related to the pending custody proceeding.

The court's decision indicates that its award was for a combination of past and future legal services. On May 6, 2014, the plaintiff filed his motion to modify custody on his own behalf, yet counsel's signature is not affixed to it. In reviewing the fee affidavit from the plaintiff's counsel, even if we attribute all of the reflected billing descriptions between May 5, 2014, to July 28, 2014, as relating to the prosecution of his motion for modification of custody, the total is $9206.25.[21] In its articulation, the court refused to allocate the award of attorney's fees between payment for past services that already had been provided by the plaintiff's counsel and a retainer for future services, but it did indicate that it found that the plaintiff's counsel was owed $41,261.12, and that he requested a retainer of $50,000 before issuing its $75,000 award.

Preliminarily, we address the issue of whether the defendant waived her right to object to the amount of the past fees or the sizeable retainer awarded. We conclude that the defendant sufficiently alerted the court to her positions that no fees should be awarded and that the inclusion, in any award, of a $50,000 retainer would be unreasonably premature. We agree with the plaintiff, however, that the defendant did not object at the hearing to the amount of the claimed allowance on the ground of the lack of any evidentiary support. As the defendant indicated in her brief, this was not a case involving an objection to the truthfulness of counsel's fee affidavit or the quality of counsel's work; rather, the defendant objected to payment of any fees, and specifically, future fees for a retainer that she claimed encompassed a hearing in Middletown that might never occur.

A

First, we discuss our conclusion that the court erred in including, as part of its award, attorney's fees related to past services. In *Dobozy* v. *Dobozy*, supra, 241 Conn. 501 n.8, our Supreme Court noted: "We interpret [§ 46b-62] to imply that a trial court may award attorney's fees incurred only in connection with the proceeding immediately before the court and not in connection with a legal action resolved in an antecedent proceeding. . . . Having already acted on the plaintiff's first two contempt motions without awarding attorney's fees thereon, the trial court did not have the authority, under § 46b-62, to award fees for those proceedings on a retroactive basis. On remand, the trial court should ensure that whatever reasonable attorney's fees are properly owing to the plaintiff, those fees reflect only legal expenses arising in connection with the contempt pro-

ceeding at issue in this case . . . ."[22] (Citation omitted.)

Furthermore, in this regard, "we note that [p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void." (Citation omitted; internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 335–36, 835 A.2d 111 (2003). Although the plaintiff's motion made a reference to fees in excess of $30,000 already due and owing to his attorneys, his request at the conclusion of his motion, which set forth the nature of the award that he was seeking, only referred to as an award "in connection with the prosecution of the plaintiff's motion for modification of joint legal custody." In reaching its conclusion that the plaintiff was entitled to an award of $75,000, we conclude that the court abused its discretion and improperly awarded fees for past legal work unrelated to the proceeding immediately before it.

B

Next, we address whether the court abused its discretion in awarding the plaintiff a retainer for future attorney's fees. The defendant claims that the trial court abused its discretion in awarding an unspecified retainer for attorney's fees in connection with the prosecution of the plaintiff's motion for modification of custody because his request lacked a sufficient evidentiary foundation and was an unreasonably high amount. The defendant also claims that the award of the retainer was impermissibly vague, failing to provide for the contingency of the motion being resolved before the full amount of the retainer fee awarded was exhausted by the rendition of future services. The plaintiff claims that the defendant waived her right to object to the reasonableness of the retainer sought by the plaintiff, and even if it was properly objected to, there was a sufficient evidentiary foundation justifying the award of fees to secure future work on the motion for modification of custody.[23] We conclude that the court's award of an unspecified retainer for future legal services was not an abuse of discretion.

The following additional facts are relevant to this issue. Upon the submission of an affidavit of counsel fees prepared by the plaintiff's attorney, the court inquired into what fees he was seeking to have paid, and the plaintiff's counsel indicated that the plaintiff

was requesting $41,261.12 in unpaid counsel fees for past work, as well as a further retainer of $50,000 for future legal services because "going forward . . . this looks like we're going to have a hearing and it may be in Middletown."[24] The court then addressed the defendant's counsel and asked if she wanted to be heard further on the request. In response, the defendant's counsel stated: "The only thing that I would say, Your Honor, I don't dispute the fees that Attorney Piazza is owed or the time or anything of that nature. I would say [I] do dispute . . . the likelihood that this would be a hearing in Middletown that will require $50,000 going forward. [M]y hope is that . . . this is the first time that we're getting a professional involved that both sides have selected who we all know and trust and respect . . . . So my hope is that there will be no hearing." Later, the defendant's counsel suggested that the court consider deferring a determination on a fee award to a later point in the progression of the custody dispute, when it would be certain that a contested hearing in Middletown would have to be scheduled.

An allowance for future counsel fees where one spouse is without ability to pay has long been recognized because a party who lacks funds would otherwise be deprived of their rights. "While ordinarily it is the better course for the court to defer such an award until after the services have been rendered, under some circumstances an allowance for future services may be necessary to safeguard a [party's] rights properly." *England* v. *England*, 138 Conn. 410, 417, 85 A.2d 483 (1951). Nevertheless, even though our Supreme Court has recognized that it is preferable to award counsel fees after they have been incurred; see *Arrigoni* v. *Arrigoni*, supra, 184 Conn. 518; in some cases, such as the case here, where the plaintiff is claiming that he has been unfairly deprived of his right to a relationship with his child, to wait until the conclusion of the proceeding would not serve to protect the rights of the party requiring the award of fees or the child's best interests.[25]

"[T]o support an award of attorney's fees, there must be a clearly stated and described factual predicate for the fees sought, apart from the trial court's general knowledge of what constitutes a reasonable fee." *Smith* v. *Snyder*, 267 Conn. 456, 477, 839 A.2d 589 (2004). To avoid the "undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees," a party "must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested." Id., 480. In applying its general knowledge and experience to a request for an award of future fees, the usual assumption that "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them

to supply evidence in support of an award of attorneys' fees [because the] . . . court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues"; (internal quotation marks omitted) *Miller* v. *Kirshner*, 225 Conn. 185, 201, 621 A.2d 1326 (1993); is not wholly applicable because the award is being sought at the commencement of the subject litigation and not, as is more typical, at the conclusion. Because courts are required to base an award of counsel fees on descriptive evidence and their observation of the progress of the case, some courts that have awarded retainers for fees to be expended in the future have proceeded cautiously and awarded a small sum with a provision for review and possible augmentation of the award at a later time, thereby allowing the court to return to the preferred method of awarding fees after it has observed the nature and skillfulness of the legal work performed.[26]

In the case of a custody modification proceeding, we are aware that many such motions are resolved by agreement after negotiation, or a referral to family relations or mediation, which eliminates the need for a contested hearing. The award of a large retainer may be unwarranted in many such cases where it is impossible to predict how the motion will proceed to a resolution, especially where the court makes no provision for future review of its award. A large retainer award also may create an incentive to litigate rather than settle the custody issue, and it may encourage the erosion of a large retainer award by needless expenditures of the attorney's time.[27]

In this case, however, the court began its decision by indicating that it had taken judicial notice of the pleadings, motion and orders in the court file, and it determined that the parties had been continually litigating since the date of their divorce. It found that between September, 2010, the month after the judgment of dissolution entered, and November, 2014, each party had filed at least thirty postjudgment motions related in some way to the parties' minor child.[28] It further noted that the defendant had accumulated legal fees in the amount of $166,000 since January, 2014. The court also had before it evidence that the plaintiff had accumulated expenses for fees related to the prosecution of his motion for modification in the amount of nearly $10,000 in the two months subsequent to the date on which the motion was filed. The court reasonably could have inferred, after reviewing these fees and the history of litigation in the case file, that this case would not be resolved easily. As a result, the court indicated that the plaintiff's request for fees was "reasonable under the circumstances."

In *Rostad* v. *Hirsch*, 128 Conn. App. 119, 15 A.3d 1176 (2011), this court disagreed with the defendant's contention that an award of attorney's fees, pendente

lite, to the plaintiff in a paternity case, in the amount of $180,489.03, was an abuse of discretion because, due to the defendant's litigiousness, the plaintiff needed excellent, time-consuming representation in order to deal with the defenses employed by the defendant. Id., 126–27.

Although the precise amount of the retainer awarded in the present case is unclear, as previously noted, even if the court awarded the full $50,000, we find no abuse of discretion here, having reviewed the record, including the parties' past filings and the evidence of both parties' past legal expenses. First, although given the opportunity to respond to the retainer request, the defendant made no inquiry of the plaintiff or his counsel as to the basis for such a retainer, and never objected to the $50,000 retainer claim on the ground of the lack of an evidentiary foundation. See *Dobozy* v. *Dobozy*, supra, 241 Conn. 501; *England* v. *England*, supra, 138 Conn. 417. The court justifiably could have taken into account the fairness of and need for comparable skill levels in both plaintiff's and defendant's legal representation, the testimony of both parties as to the history and current status of their custody and visitation arrangements,[29] its general knowledge and experience with these types of family cases, as well as its knowledge of past proceedings from its review of the file. The court acquainted itself with the history of the case, which, sadly, reflected the level to which the parties' ability to effectuate their original parenting agreement had deteriorated. Given the nature of the filings since the plaintiff had sought a modification of custody, the dispute seemed likely to continue for a considerable period of time. The court also had evidence of the parties' ability to accumulate significant attorney's fees in relatively brief periods of time. Under the unique circumstances of this high conflict case, a substantial retainer award was not an abuse of discretion, as it was not mere speculation to conclude that the matter before the court would most likely require a considerable amount of future legal effort to achieve a resolution.[30] In addition, any portion of the award for past fees rendered in prosecuting the plaintiff's motion for modification of custody since he had retained the assistance of legal counsel in May, 2014, also was appropriate and not an abuse of discretion.

Consideration of the foregoing and the general factual background disclosed by the record makes clear that the court was fully warranted in awarding the allowance that it did for a retainer and past fees rendered that were related to the recently initiated prosecution of the plaintiff's motion for modification of custody. Although ordinarily it is the better course for the court to defer an award of attorney's fees until after the services have been rendered, in certain circumstances, an allowance for future services may be necessary to properly safeguard a party's rights. The court was justified in treating

this as such a case.

The judgment is reversed only as to the award of attorney's fees for past legal services rendered that were unrelated to the plaintiff's May 6, 2014 motion for modification of custody, and the case is remanded for further proceedings on the plaintiff's motion for attorney's fees, consistent with this opinion, to reduce the amount of the award by the amount of past legal fees awarded to the plaintiff that were not directly related to the prosecution of his motion for modification of custody. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] This court denied the parties' motions to consolidate the two appeals. The related appeal, *Pena* v. *Gladstone*, 168 Conn. App. 175,      A.3d      (2016), involves the plaintiff's appeal from the denial by the court, *Tindill, J.*, of his motion for additional attorney's fees to defend the present appeal.

[2] A guardian ad litem was appointed by the court on October 9, 2012. The issue of payment of the fees of a guardian ad litem is not addressed in the court's memorandum of decision and is not the subject of this appeal.

[3] On September 25, 2015, the court filed a corrected memorandum of decision to replace the word "defendant's" with the word "plaintiff's" in the following sentence on page 2, line 4 of its decision: "There was no evidence that the *plaintiff's* parents were willing or able to [pay the plaintiff's legal fees]." (Emphasis added).

[4] Although not raised as an issue on appeal, the defendant disputes this finding as inaccurate, claiming that there was no evidence to support the finding that Gladstone Management Corporation is a closely held family business entity, rather than a corporation. The plaintiff counters that the court had heard testimony and/or argument concerning previous matters in this case that disclosed that the defendant's father, David Gladstone, was the founder and chief executive officer of this corporation. During argument on the motion for attorney's fees, the defendant also referred the court to a recent motion that the plaintiff had filed seeking to depose her father. In her reply brief, the defendant does not dispute the plaintiff's assertion that the corporation is connected to the Gladstone family of which she is a member. Even if the court took judicial notice of prior information it had acquired related to the corporation, and failed to notify the parties of such notice, we conclude that the defendant's familial connection to her employer was not central to the issues at hand. Although the fact of the defendant's ability to borrow funds from her father for legal fees was discussed during the hearing, the sources from which her father may have acquired the funds to lend to her was not an issue that was discussed. "Notice to the parties is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing." (Citations omitted.) *Moore* v. *Moore*, 173 Conn. 120, 121–22, 376 A.2d 1085 (1977).

[5] Here, the court, in a footnote, indicated that "[t]he parties' July 28, 2014 stipulation, in which they allocate 18 percent of the fees of Visitation Solutions to the plaintiff and 82 percent of the fees to the defendant, reflects this disparity." At the beginning of the hearing, the defendant agreed, in response to the court's question, that this stipulation to the allocation was fair and equitable.

[6] The reference to "costs" appears to be a minor error on the court's part. The plaintiff did not seek costs, or present any evidence regarding costs, and the defendant has not argued that any costs were improperly awarded. The issue on appeal is the award of attorney's fees.

[7] General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the . . . age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded,

the desirability and feasibility of such parent's securing employment."

[8] General Statutes § 46b-62 provides in relevant part: "(a) In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceedings concerns the custody, care, education visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[9] In light of our Supreme Court's ruling in *Krasnow*, we decline the defendant's invitation to adopt a different method for determining whether to award counsel fees in postdissolution proceedings to avoid unauthorized property redistributions. The statute, § 46b-62, is not limited to fees incurred during a dissolution action, as it refers to "any proceedings seeking relief under the provisions of this chapter," which would include a proceeding seeking to modify custody pursuant to General Statutes § 46b-56. It also specifically refers to an award of fees to a spouse or a parent in a proceeding concerning the custody of a minor child.

[10] General Statutes § 46b-87 governs the award of attorney's fees upon a finding of contempt in contempt proceedings in domestic relations cases.

[11] The inherent equitable powers of the family court also should permit the denial of an award of counsel fees despite the poor financial situation of the moving party if the legal claim being pursued is without merit or frivolous. See *Dobozy* v. *Dobozy*, supra, 241 Conn. 499 (§ 46b-62 empowers trial court to award attorney's fees to make financially disadvantaged party whole for pursuing legitimate legal claim).

[12] In footnote 2 of the defendant's brief, she claims that the amount attested to by her on her financial affidavit as to the amount of equity she possessed in the home, $722,129.69, was a "mistake," however, she never moved to reargue or moved to open the judgment and correct the record. "In deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record." *State* v. *Evans*, 9 Conn. App. 349, 354, 519 A.2d 73 (1986). The trial court is entitled to rely on the sworn financial affidavits of the parties filed in family matters. See, e.g., *Voloshin* v. *Voloshin*, 12 Conn. App. 626, 628, 533 A.2d 573 (1987).

[13] The defendant's claimed monthly expenses are $26,474.90, which translates into $6109.64 weekly. The affidavit reflects numerous expenses only those with income well above average might consider essential, such as private school, camps, piano lessons, four athletic programs for the minor child, domestic help, yard maintenance, entertainment, travel and vacations, Pilates classes, and a club membership.

[14] In fact, during the hearing, the court sustained the defendant's objection and only allowed limited testimony by the plaintiff about the defendant's alleged noncompliance with the visitation order, indicating it did not want "to get into the substance of other issues."

[15] This court noted that the equity in the plaintiff's Greenwich property alone was sufficient to permit him to make the payments in a timely manner. *Wood* v. *Wood*, supra, 160 Conn. App. 726 n.5.

[16] A trial court's ability to employ broad discretionary powers in determining whether to award counsel fees to a party in a domestic case was further addressed in *Ramin* v. *Ramin*, supra, 281 Conn. 324, in which our Supreme Court expanded the *Maguire* rule by permitting the trial court to award counsel fees in the case of egregious litigation misconduct that has required the other party to expend significant sums for attorney's fees, even if the innocent party possesses ample liquid funds and regardless of whether the court's other financial orders would be undermined, provided that the trial court determines that the misconduct has not been adequately addressed by other orders of the court. Id., 357; but see *Berzins* v. *Berzins*, 306 Conn. 651, 658, 51 A.3d 941 (2012) (refusing to expand scope of *Ramin*'s expansion of *Maguire* beyond discovery misconduct that occurs prior to entry of final judgment of dissolution). We do not, however, interpret *Berzins* as prohibiting a trial court from considering other equitable factors to justify an award of attorney's fees if the court first ascertains that one of the two requirements in the *Maguire* rule has been met. See *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 876; see also *Benavides* v. *Benavides*, supra, 11 Conn. App. 156.

[17] The defendant testified, however, that her payment on the loan from her father was made annually.

[18] Neither party sought review of the court's articulation. See Practice Book § 66-7.

[19] The defendant concedes that an award of up to $9206.25 for prior legal services related to the plaintiff's motion for modification of custody was supported by the record by total billings that appear in the fee affidavit by the plaintiff's counsel from May 5 to July 27, 2014. Therefore, the court's unspecified award for past services rendered relevant to the plaintiff's motion for modification of custody and the retainer for related, future services could have been as high as $65,793.75, which the defendant claims was an unreasonable amount to litigate a motion to modify legal custody. She argues that such an award lacked a sufficient evidentiary foundation, created a perverse incentive to litigate, rather than settle the custody issue, and did not provide for potentially necessary transfers if the plaintiff replaces his current attorney or a refund if the custody issue were to be resolved before the expenditure of the full retainer.

[20] The court awarded the plaintiff $75,000 in attorney's fees. The plaintiff requested a $50,000 retainer for future services and $41,261.12 for past services rendered that the plaintiff had not paid. Even if we assume that the court awarded the plaintiff the full amount of his request for past services, the amount of the retainer awarded would have been a sizeable amount, $33,738.88.

[21] See footnote 19 of this opinion.

[22] See also *Mallory* v. *Mallory*, supra, 207 Conn. 58 (where party is found in contempt, §§ 46b-87 and 46b-62 permit trial court to award attorney's fees incurred during "that" contempt proceeding); *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 185,     A.3d     (2016) (fees awarded should be restricted to time expended in relation to pending contempt action).

[23] The plaintiff also argues that the defendant has not adequately briefed her vagueness claim. We do not agree with that position.

[24] In this instance, the plaintiff's counsel evidently was referring to the Regional Custody Docket located in the judicial district of Middlesex at Middletown, which accepts complex custody disputes referred to it by family courts around the state.

[25] During oral argument before this court, the plaintiff's attorney admitted in response to a question from the panel that the custody dispute has made no progress since the commencement of this appeal in December, 2014.

[26] See, e.g., *Temple* v. *Brooks*, Superior Court, judicial district of Fairfield, Docket No. FA-85-0230050-S (March 27, 1990) (1 Conn. L. Rptr. 411) (motion for attorney's fees granted without prejudice to further consideration of matter at time of final hearing; defendant ordered to advance plaintiff fees of $3500 within thirty days); *Kiernan* v. *Kiernan*, Superior Court, judicial district of Hartford, Docket No. FA-00-0723876-S (May 25, 2000) ($7500 pendente lite attorney's fee retainer awarded to plaintiff without prejudice to her right to return to court during pendente lite period if that sum proved to be inadequate).

[27] We do recognize, however, that an award of a large retainer also may discourage an overly litigious obligor from addressing the issue in a reasonable fashion, particularly if there is provision for a review, at the conclusion of the matter, to see how much of the retainer has been expended by the legal work performed.

[28] Our review of the record reflects that since the date of the filing of the plaintiff's motion for modification of custody on May 6, 2014, in addition to the plaintiff's motion for attorney's fees, he had filed three motions pertaining to alleged violations of the visitation schedule, including a motion for contempt, and a motion for a commission to depose David Gladstone, a resident of Virginia. The defendant had filed a motion for an updated psychological and custody evaluation, a motion for therapeutic visitation and a motion for a protective order regarding the scheduling of her deposition. The guardian ad litem had filed a request for a status conference to address compliance with court orders affecting the minor child.

[29] The record reflects that the visits were to be supervised and evaluated by an expert, the minor child was seeing a therapist, and the exchange of the child for visits was occurring at the Greenwich public library. The court heard evidence that an arrest had occurred at the time of an exchange of the child for a visit with the plaintiff. It appears that the suggestion by the defendant's counsel of the possibility of a resolution without the need for protracted litigation was overly optimistic in light of the number of filings in this case since May 6, 2014. The following testimony of the defendant when being questioned by the plaintiff's counsel during the hearing further illustrates the contentiousness with which the parties approach matters related to visitation:

"Q. [Y]our former husband is to see his son on weekends?

"A. Yes.

"Q. The last time he saw your son was for Father's Day for an hour?

"A. No.

"Q. When was the last time he saw your son?

"A. It was the end of June in the Greenwich library. I can't remember the date.

"Q. Okay. Is that the date he got arrested?

"A. Yes.

"Q. And that was during an exchange for visitation, right?

"A. Yes.

"Q. May 16, he was supposed to see your son, and you said your son was sick and you wouldn't take him, right?

"A. I don't remember.

"Q. Same for May 30?

"A. I don't remember.

"Q. Your husband asked to enforce his one week of visitation in the summer, he gave the week and you left with your son for Paris, right?

"A. No.

"Q. Were you in Paris with your son?

"A. Yes.

"Q. When was that?

"A. June 18 and I can't remember when we got back, maybe the 28th.

"Q. And you're saying your former husband did not ask for those dates to be with his son pursuant to the separation agreement?

"A. No.

"Q. On June 13, you said your son was sick and you wouldn't take him, correct, to visitation?

"A. I don't remember.

"Q. June 11 or July 11 the same thing, you said he was sick and you wouldn't take him?

"A. I don't remember.

"Q. And I subpoenaed the medical records for your son, correct?

"A. Yes.

"Q. And you don't have records of taking him to the doctor on those different dates, do you?

"A. I do have records, but they're not all there, and some of them—

"Q. They're not here though?

"A. No, not all there."

[30] Given the family court's inherent power to act equitably, should the custody dispute achieve a swift resolution, the defendant would be able to file a subsequent motion for an accounting of attorney's fees expended on behalf of the plaintiff in pursuing his motion and request a refund, if one is justified.

———————————————